Filed 5/14/21  Quiroz v. World Variety Produce CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SEVEN

| | |
|---|---|
| JUAN ANTONIO QUIROZ, | B303012 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19STCV07024) |
| v. | |
| WORLD VARIETY PRODUCE, INC. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Michelle Williams Court, Judge.  Affirmed.

Michelman & Robinson, Reuben A. Ginsburg, and Mona Z. Hanna for Defendants and Appellants.

Lavi & Ebrahimian, N. Nick Ebrahimian, Jordan D. Bello, and Tielle Shue; The deRubertis Law Firm and David M. deRubertis for Plaintiff and Respondent.

# INTRODUCTION

Juan Antonio Quiroz sued his prior employer, World Variety Produce, Inc., and its owner, Joe Hernandez (collectively, World Variety), for various wage and hour violations. The trial court denied World Variety's motion to compel arbitration, ruling World Variety failed to prove that Quiroz, by signing a form acknowledging receipt of an employee handbook that included a section containing an arbitration agreement, agreed to arbitrate his claims. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Quiroz Sues World Variety*

In March 2019 Quiroz filed this action against World Variety, a produce distributor. Quiroz alleged that World Variety employed him from 1985 to 2018 as a "buyer," a position that involved "routine" work such as "travel[ling] to various regions of Mexico, collect[ing] certifications from farmers," and taking "photos of the field and produce," but that World Variety misclassified him as an exempt employee for purposes of the California Labor Code. Quiroz also alleged World Variety failed to transfer or pay the value of shares of stock the company owed him. Quiroz asserted causes of action for violations of Labor Code provisions governing wages, wage statements, and meal and rest breaks; a cause of action for breach of contract; and a cause of action for unfair competition.

B.    *World Variety Moves To Compel Arbitration*

World Variety filed a motion to compel arbitration, attaching its employee handbook from August 2017.  The handbook had nine sections, including one titled "Arbitration Agreement."  This section stated, among other things, the employee and World Variety agree to arbitrate all "disputes arising out of, relating to, and/or in connection with [the employee's] employment."  The final page of the arbitration section stated:  "ENTERING THIS AGREEMENT IS NOT A CONDITION OR REQUIREMENT OF EMPLOYMENT AND/OR CONTINUED EMPLOYMENT.  EMPLOYEE UNDERTSANDS THAT BY SIGNING BELOW, EMPLOYEE GIVES UP ALL RIGHTS TO A JURY TRIAL . . . AS TO CLAIMS COVERED BY . . . THIS AGREEMENT."  The last page of the arbitration section included over half a page of blank space where the employee could sign, but there was no printed signature line.

The last page of the handbook was a form titled "Receipt of Employee Handbook."  The form included six bullet points, followed by a printed signature line at the bottom of the page.  One bullet point stated the employee "is responsible for understanding and complying with the policies and procedures" in the handbook, while another bullet point similarly stated the employee "agree[s] to read and abide by the policies in the Handbook."  The handbook receipt form, however, did not state that the employee agrees to arbitration or that the employee agrees to the terms described in the arbitration section of the handbook.

World Variety also submitted a copy of a handbook receipt form signed by Quiroz in August 2017 and argued Quiroz agreed to the terms described in the arbitration section of the handbook

3

by signing the handbook receipt form. Quiroz argued in opposition to the motion he did not agree to the arbitration agreement when he signed the form. He also submitted a declaration stating that, when World Variety originally gave him the handbook, he did not sign the receipt form. World Variety subsequently told Quiroz to go to the office of Janene Allen, the company's Senior Director of Human Resources. Allen gave Quiroz a copy of the receipt form—not the entire handbook (or the arbitration section). Quiroz signed the form acknowledging he received the handbook.

C.      *The Trial Court Denies the Motion*

The trial court denied World Variety's motion to compel arbitration, ruling World Variety failed to meet its burden to prove Quiroz agreed to arbitrate his claims. The court ruled the signed handbook receipt form did not demonstrate Quiroz agreed to arbitrate his claims because the form "does not address the issue of arbitration at all." The court also stated that, while "the arbitration provision in the handbook clearly state[s] that arbitration is not mandatory," the evidence was that, after Quiroz received the handbook, "signing the acknowledgement of receipt of the handbook was mandatory." World Variety timely appealed.

## DISCUSSION

A.      *Applicable Law and Standard of Review*

"'Whether an agreement to arbitrate exists is a threshold issue of contract formation and state contract law.'" (*Cohen v. TNP 2008 Participating Notes Program, LLC* (2019)

31 Cal.App.5th 840, 859; see *Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 843-844.) "The party seeking arbitration bears the burden of proving the existence of an arbitration agreement . . . ." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*); accord, *Garcia v. KND Development 52, LLC* (2020) 58 Cal.App.5th 736, 743-744; *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 65-66.) "'When "the language of an arbitration provision is not in dispute,"'" and "'"no conflicting extrinsic evidence is introduced to aid the interpretation of an agreement to arbitrate, the Court of Appeal reviews de novo a trial court's ruling on a petition to compel arbitration."'" (*Esparza v. Sand & Sea, Inc.* (2016) 2 Cal.App.5th 781, 787 (*Esparza*); accord, *Brinkley v. Monterey Financial Services, Inc.* (2015) 242 Cal.App.4th 314, 325; see *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 866 [where there is "no conflict in the extrinsic evidence," we "make an independent determination of the meaning of the contract"].) "Although both California and federal law recognize the important policy of enforcing arbitration agreements" (*Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 313), that policy "is based on the assumption that 'parties have elected to use [arbitration] as an alternative to the judicial process'"; therefore, the policy "does not extend to those who . . . have not consented to arbitration" (*Berglund v. Arthroscopic & Laser Surgery Center of San Diego, L.P.* (2008) 44 Cal.4th 528, 539; see *Garcia*, at p. 744 ["'"public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement"'"]).

B.      *Quiroz Did Not Agree To Arbitrate His Claims by Signing the Receipt Form*

"In California, '[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate.'" (*Pinnacle, supra*, 55 Cal.4th at p. 236; accord, *Martinez v. BaronHR, Inc.* (2020) 51 Cal.App.5th 962, 967; see *Lamps Plus, Inc. v. Varela* (2019) ___ U.S. ___, ___ [139 S.Ct. 1407, 1415, 203 L.Ed.2d 636] [under the Federal Arbitration Act, courts ordinarily enforce arbitration agreements "by relying on state contract principles"]; *Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 244 ['"When deciding whether the parties agreed to arbitrate a certain matter,"' courts generally '"apply ordinary state-law principles that govern the formation of contracts."'].)  As with any contract, '"[a]n essential element"' of an arbitration agreement '"is the consent of the parties, or mutual assent."' (*Martinez*, at p. 967; see *Esparza, supra*, 2 Cal.App.5th at pp. 787-788.)  '"Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings."' (*Martinez*, at p. 967; accord, *Esparza*, at p. 788.)

We first consider the language of the handbook and receipt form to determine whether Quiroz agreed to arbitrate his claims. (See Civ. Code, §§ 1638, 1639; *State of California v. Continental Ins. Co.* (2012) 55 Cal.4th 186, 195; *Martinez v. BaronHR, Inc., supra*, 51 Cal.App.5th at p. 967.)  We consider the handbook "as a whole, and interpret contested provisions in their context, not in isolation, with the aim of giving effect to all provisions, if doing so is reasonably possible." (*Camacho v. Target Corp.* (2018)

6

24 Cal.App.5th 291, 306; see Civ. Code, § 1641; *Mitri v. Arnel Management Co.* (2007) 157 Cal.App.4th 1164, 1170; *Romo v. Y-3 Holdings, Inc.* (2001) 87 Cal.App.4th 1153, 1158.) If "the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning." (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822; see *Cuenca v. Cohen* (2017) 8 Cal.App.5th 200, 222; *RealPro, Inc. v. Smith Residual Co., LLC* (2012) 203 Cal.App.4th 1215, 1221.)

Considering the language of the handbook as a whole, we conclude Quiroz did not agree to arbitrate his claims. As World Variety points out, the final page of the arbitration section stated that an employee could agree to arbitration "by signing below," and although Quiroz did not sign below on that page, he did sign the handbook receipt page, which was at the end of the handbook and after the arbitration section, and therefore technically (although not immediately) "below." But the language of the receipt page shows Quiroz did not agree to the arbitration terms by signing the receipt page. The receipt form was titled "Receipt of Employee Handbook," indicating that the primary purpose of signing the form was, as Quiroz contends, to acknowledge that he received the handbook, not that he agreed to arbitration. (See *Building Maintenance Service Co. v. AIL Systems, Inc.* (1997) 55 Cal.App.4th 1014, 1030 [to interpret contracts we give "'consideration to the ordinary meaning of the words used [citation] together with the subject matter heading'"]; *Myers Buldings Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 974 [same].) The receipt form did not say Quiroz was agreeing to arbitration.

The receipt form also required Quiroz to make several acknowledgments, but none of those acknowledgments referred to

7

the arbitration agreement.  Generally, where an employee signs a form acknowledging receipt of a handbook, "'[t]o support a conclusion that an employee has relinquished his or her right to assert an employment-related claim in court," at "a minimum, there should be a specific reference to the duty to arbitrate employment-related disputes in the acknowledgment of receipt form signed by the employee . . . .'" (*Esparza*, *supra*, 2 Cal.App.5th at p. 791; accord, *Sparks v. Vista del Mar Child & Family Services* (2012) 207 Cal.App.4th 1511, 1522.)  Here, the form required Quiroz to acknowledge that he received the handbook, that World Variety had the right to modify the handbook, that Quiroz had the right to discuss the handbook with his supervisor or human resources personnel, and that the handbook did not limit the at-will nature of the employment.  But "[c]onspicuously absent from the acknowledgment receipt form [was] any reference to an *agreement* by the employee to abide by the employee handbook's arbitration agreement provision." (*Mitri v. Arnel Management Co.*, *supra*, 157 Cal.App.4th at p. 1173.)

It is true, as World Variety repeatedly mentions, one of the bullet points on the receipt page made a passing reference to arbitration, but it did not state the employee agreed to arbitration by signing the receipt page.  The bullet point stated the employee "understand[s] that the company has the right to modify, amend, or withdraw any and all of the policies and procedures described in this Employee Handbook at any time, with or without cause, except . . . any arbitration agreement I may have with the company."  But this language supports Quiroz, not World Variety.  By referring to any arbitration agreement the employee *may* have with the company, the receipt

8

form assumes and suggests the employee is not agreeing to arbitrate any claims by signing the form.  Had the parties intended the receipt form to be an arbitration agreement, any reference to arbitration should have clearly stated the employee was agreeing to arbitration.  (See *Esparza*, *supra*, 2 Cal.App.5th at p. 790 [""absent a clear agreement to submit disputes to arbitration, courts will not infer that the right to a jury trial has been waived""].)

The receipt form included bullet points stating the employee agreed to comply with the "policies" and "procedures" in the handbook, which, according to World Variety, included the arbitration terms.  Again, the language of the handbook does not support World Variety's position.  First, the handbook used different language when describing the arbitration agreement and describing the company's policies and procedures.  (See, e.g., *Romo v. Y-3 Holdings, Inc.*, *supra*, 87 Cal.App.4th at p. 1159 [court's conclusion the employee did not agree to arbitrate claims by signing a handbook receipt form was "based upon the disparate language between [the arbitration section] and the remaining portions of the employee handbook"].)  The arbitration section referred to the arbitration terms as an "agreement," not a policy or procedure; in fact, the arbitration section did not use the term "policy" or "procedure."  On the other hand, the handbook contained sections titled "Employment Policies" and "Wage and Salary Policies," and regularly used the terms "policy" and "policies" to refer to other (non-arbitration) provisions in the handbook.

Second, the arbitration section, unlike the policies described elsewhere in the handbook, stated that agreeing to arbitration was not a mandatory condition of employment.  For

9

example, the handbook included mandatory policies and prohibitions concerning how employees may use company cell phones, computers, and email, and how they may access electronic communications. The handbook required employees to consent to World Variety conducting video surveillance of its premises. The handbook included a "Harassment, Discrimination and Retaliation Prevention Policy" that prohibited various types of harassment and discrimination and instituted a "'zero tolerance' policy" on workplace violence. And the handbook prohibited using alcohol and drugs while working and prohibited smoking on World Variety premises.

The facts of this case are similar to the facts in *Sparks v. Vista Del Mar Child & Family Services*, *supra*, 207 Cal.App.4th 1511. In *Sparks* the employer distributed to all employees a handbook containing an arbitration clause. (See *id.* at p. 1519.) Like the handbook here, the handbook in *Sparks* did not contain a printed signature line immediately after the arbitration provision where the employee could indicate he or she agreed to arbitration. (See *ibid.*) And like Quiroz, the employee in *Sparks* signed only a form acknowledging receipt of the handbook that stated he agreed to be "governed" by the employee's personnel policies. (See *id.* at p. 1516.) The court in *Sparks* held that, because "the acknowledgment form did not reference the arbitration clause, much less advise [the employee] that he would be bound by it," the form did not show the employee had agreed to arbitration. (*Id.* at p. 1522.) Similarly, the acknowledgment of receipt form here did not state the employee was agreeing to arbitration (although it included a number of different acknowledgments). In addition, the handbook treated the arbitration terms differently from other policies by using

10

different language to describe the terms of arbitration and the employer's policies, and the only reference to arbitration on the receipt form suggested the employee was not bound by an arbitration agreement. Quiroz, even more than the employee in *Sparks*, did not agree to arbitration by signing the receipt form.

The relevant extrinsic evidence supports the conclusion Quiroz did not agree to arbitrate his claims. The trial court found that, after World Variety provided Quiroz the handbook, World Variety required him to sign the receipt form as a condition of employment. Substantial evidence supported the trial court's finding. (See *Garcia v. KND Development 52, LLC*, *supra*, 58 Cal.App.5th at p. 744 ["[w]e review the court's factual conclusions under the substantial evidence standard" when reviewing "a trial court's denial of a petition to compel arbitration"]; *Martinez v. BaronHR, Inc.*, *supra*, 51 Cal.App.5th at p. 966 [where the trial court relies on "extrinsic evidence . . . and [makes] an implied credibility finding from that evidence" to determine whether there was an agreement to arbitrate, "'"[w]e must accept the trial court's resolution of disputed facts when supported by substantial evidence"'"]; *Burch v. Premier Homes, LLC* (2011) 199 Cal.App.4th 730, 742 ["On an appeal challenging the interpretation given to a writing . . . the substantial evidence rule will apply in cases where the parties present conflicting extrinsic evidence to aid in the interpretation."].)

Quiroz stated in his declaration that he initially did not sign the receipt form after he received the employee handbook, but that World Variety subsequently directed him to go to Allen's office, where Allen gave Quiroz a new copy of the receipt form (only) and asked him to sign it. It was reasonable for the court to find, based on this testimony, that Quiroz did not intend to sign

11

the receipt form, but that World Variety told him he had to sign it to continue working.  (See *Holmes v. California Victim Compensation & Government Claims Bd.* (2015) 239 Cal.App.4th 1400, 1406 ["'Inferences may constitute substantial evidence as long as they are the product of logic and reason rather than speculation or conjecture.'"]; *Maaso v. Signer* (2012) 203 Cal.App.4th 362, 371 ["Substantial evidence includes reasonable inferences drawn from the evidence in favor of the judgment."].)  As discussed, the arbitration section stated that agreeing to arbitration was "not a condition or requirement of employment and/or continued employment" with World Variety.  That World Variety required Quiroz to sign the handbook receipt form confirms he was not agreeing to arbitration, which, according to the arbitration agreement in the handbook, was not mandatory.

*Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373 (*Harris*), on which World Variety primarily relies, is distinguishable.  In *Harris* a new employee acknowledged he received a handbook from his employer, which contained an arbitration agreement.  (*Id.* at p. 381.)  But that is where the similarities between *Harris* and this case end.  The arbitration section of the handbook in *Harris* stated arbitration was "an absolute prerequisite" to "hiring by, and continued employment with," the employer.  (*Id.* at p. 377.)  It stated:  "'If for any reason, an applicant fails to execute the Agreement to Arbitrate yet begins employment, that employee will be deemed to have consented to the Agreement to Arbitrate by virtue of receipt of

12

this Handbook.'" (*Id.* at p. 378.)  There was no similar provision in the arbitration section of the handbook Quiroz received.[1]

   C.   *Quiroz Did Not Impliedly Agree To Arbitrate His Claims*

World Variety also argues that, even if Quiroz did not expressly agree to arbitrate his claims by signing the handbook receipt page, Quiroz impliedly agreed to arbitrate his claims by continuing to work for World Variety and failing to object after receiving the handbook containing the arbitration agreement.  "A party's acceptance of an agreement to arbitrate . . . may be implied in fact." (*Pinnacle, supra*, 55 Cal.4th at p. 236; accord, *Harris, supra*, 248 Cal.App.4th at pp. 383-384.)  For example, in some situations, "when an employee continues his or her employment after notification that an agreement to arbitration is a condition of continued employment, that employee has impliedly consented to the arbitration agreement." (*Diaz v. Sohnen Enterprises* (2019) 34 Cal.App.5th 126, 130; see *Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 420.)  As World Variety recognizes, however, courts have generally found an employee impliedly agreed to arbitrate only where accepting a

---

[1]     On December 16, 2020 the Supreme Court ordered not published the other case World Variety primarily relies on, *Conyer v. Hula Media Services, LLC* (Aug. 26, 2020, B296738), review dismissed as moot March 24, 2021, S264821.  In the other case World Variety cites, *Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, the employee, unlike Quiroz, did not sign a form acknowledging receipt of an employer's handbook that contained both an arbitration agreement and other policies. The employee in *Serafin* executed a two-page agreement entitled "MANDATORY ARBITRATION POLICY." (*Id.* at p. 171.)

13

proposed arbitration agreement was a mandatory condition of employment. World Variety asserts, however, that "[t]he same rule should apply when an employer proposes a voluntary arbitration policy . . . ."

Assuming World Variety has not forfeited this argument,[2] it is meritless. Where an employer requires an employee to agree to arbitration before beginning or continuing employment, the employee has "'knowledge of the arbitration agreement,'" and the employee "'continue[s] to work after receipt of the arbitration agreement,'" a factfinder may infer that the employee has consented to the mandatory arbitration agreement by beginning or continuing employment. (*Gorlach v. Sports Club Co.* (2012) 209 Cal.App.4th 1497, 1507; see *id.* at p. 1508 ["California law permits employers to implement policies that may become unilateral implied-in-fact contracts when employees accept them by continuing their employment."].) The rationale is that, if the employee did not agree to the proposed arbitration agreement, he or she would have not accepted or would have discontinued the employment. But where, as here, the employer does not require the employee to accept a proposed arbitration agreement to continue the employment relationship, that the employee continues working for the employer after receiving the proposed agreement, without more, says nothing about whether the employee has (impliedly) agreed to arbitration. (See *id.*, at p. 1507 ["""Although an implied in fact contract may be inferred from the 'conduct, situation or mutual relation of the parties, the

---

[2] World Variety did not raise this argument in its motion to compel arbitration in the trial court. But in his opposition Quiroz for some reason raised the issue and argued there was no implied agreement.

14

very heart of this kind of agreement is an *intent* to promise."'"']; see also *Southern California Acoustics Co. v. C. V. Holder, Inc.* (1969) 71 Cal.2d 719, 722 ["Silence in the face of an offer is not an acceptance, unless there is a relationship between the parties or a previous course of dealing pursuant to which silence would be understood as acceptance."]; *C9 Ventures v. SVC-West, L.P.* (2012) 202 Cal.App.4th 1483, 1500 [same].)  World Variety again relies on *Harris, supra*, 248 Cal.App.4th 373.  But as discussed, unlike World Variety, the employer in *Harris* required employees to agree to arbitration as a mandatory condition of employment, and the arbitration agreement stated the employee would be deemed to have accepted the agreement by continuing employment, even if he or she did not sign the agreement.  (See *id.* at p. 381.)  Neither was the case here.

## DISPOSITION

The order is affirmed.  Quiroz is to recover his costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.          FEUER, J.


15