Filed 5/17/22  Certified for Publication 5/23/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| FIONA TRINITY, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> LIFE INSURANCE COMPANY OF NORTH AMERICA et al., <br><br>     Defendants and Appellants. | B312302 <br><br> (Los Angeles County Super. Ct. No. 20STCV10051) |

APPEAL from an order of the Superior Court of Los Angeles County, Michelle Williams Court, Judge.  Affirmed.

Littler Mendelson, Tanja L. Darrow and Sheerin Mehdian for Defendants and Appellants.

Shegerian & Associates, Carney R. Shegerian and Jill McDonell for Plaintiff and Respondent.

————————————

Fiona Trinity sued Life Insurance Company of North America (LINA), Zenfira Kadzhikyan and Lucine Nikogosian (collectively LINA parties) for discrimination, harassment and wrongful termination.  The LINA parties moved to compel arbitration based on an agreement they alleged Trinity had electronically acknowledged in 2014 during her employment with LINA.  The trial court denied the motion, finding the LINA parties had not established the existence of an agreement to arbitrate and, even if they had, the purported agreement could not be enforced because it was procedurally and substantively unconscionable.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1.  *The Parties and the Complaint*

LINA, a subsidiary of Cigna Corporation, is an insurance company that underwrites indemnity, disability, accident and health insurance plans.  Trinity worked for LINA as a claims associate and then a senior claims associate from November 2008 until she was fired in January 2020.  Kadzhikyan was Trinity's direct supervisor beginning in 2015.  Trinity indirectly reported to Nikogosian.

On March 12, 2020 Trinity filed this lawsuit alleging 15 causes of action, including for discrimination and harassment based on disability by association and age in violation of California's Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) and wrongful termination in violation of public policy.  The complaint sought economic, noneconomic and punitive damages, as well as attorney fees.

2. *The Motion To Compel Arbitration*

On May 14, 2020 the LINA parties moved to compel arbitration based on an arbitration provision in the Cigna Corporation employee handbook that was distributed by email to employees of all Cigna Corporation's subsidiaries, including LINA, in November 2013.  The arbitration provision, which appears on page 37 of the 44-page handbook, states, "By accepting employment, compensation and/or benefits, you have agreed to arbitrate serious employment-related disagreements between you and the company.  Notwithstanding any other provision in this handbook, the duty to arbitrate employment-related disagreements is a contractual obligation that both you and the company are required to adhere to."  The provision continues, "The arbitration process is administered by the American Arbitration Association (AAA) using the company's Employment Dispute Arbitration policy and Employment Dispute Arbitration Rules and Procedures. . . .  [¶]  . . . Copies of these documents can be found in the 'Workplace & Culture' section of the *Your Cigna Life* intranet under 'Workplace Policies and Programs.'  If you are unable to locate the information you are seeking on the intranet, please contact the Your Cigna Life Service Center . . . ."  The final two pages of the handbook contain a section titled, "Acknowledgement and Agreement," which states, "By returning to the Employee Handbook page on *Your Cigna Life* and clicking the box next to the Acknowledgement statement, then clicking the 'Done' button to record my acceptance of these company policies:  . . . I understand and agree any dispute between Cigna and me arising out of or relating to my candidacy for employment, my employment or termination of my employment with Cigna . . . including claims of

3

discrimination or claims related to wage and hour issues, shall be resolved under Cigna's Employment Dispute Arbitration Program, which includes final mandatory binding arbitration. I also understand the Cigna Companies Employment Dispute Arbitration Policy and the Cigna Companies Employment Dispute Rules and Procedures form a legally enforceable contract between Cigna and me."[1]

In support of its motion to compel arbitration, the LINA parties submitted the declaration of Michael Reagan, the employee relations managing director of Cigna Corporation, who

---

[1] The Employment Dispute Arbitration Policy and Employment Dispute Arbitration Rules and Procedures were not provided to employees contemporaneously with the handbook. The policy generally contained much of the same information provided in the handbook. The rules and procedures described additional requirements, including time limits within which an arbitration demand must be filed: "Any demand for arbitration must be sent within the time limits that would apply to the party's claim if it were being resolved in court and not by arbitration. . . .  If the Arbitration is an appeal from [an internal grievance process], the demand must be submitted within thirty (30) calendar days after receiving the final decision in the internal [process]." The rules and procedures also specified the scope of discovery that would apply to the arbitration: "A party will be entitled to take no more than three days of depositions . . . .  A party may not depose any employee of any Cigna company who certifies in writing to the arbitrator that he/she has no direct knowledge of the facts surrounding the dispute." In addition, "The scope, timing, and procedure for discovery may be expanded, altered, amended or otherwise changed to accommodate the circumstances of a particular arbitration upon a showing of good cause as determined by the arbitrator . . . ."

stated he was familiar with the personnel policies and practices of Cigna Corporation and its subsidiaries, including LINA, and was responsible for overseeing the roll-out of the 2013 employee handbook and tracking employee acknowledgement of the handbook. According to Reagan, "As part of the distribution of its 2013 Employee Handbook, an email was sent to Cigna employees at each covered subsidiary, including LINA, in late 2013. Each covered employee would have been required to log into the website using the employee's unique username and password. Once logged into the website using these unique credentials, the employee would have been prompted to the 'Take Action' section. Employees were then required to make affirmative actions to specifically acknowledge their agreement to be bound by these policies, by marking the box next to 'acknowledgement,' and then affirmatively clicking 'Done.'" Reagan's department would at some point receive a report listing employees who had not completed this process and those employees would be informed their employment would be terminated if they did not execute the acknowledgement. Attached to Reagan's declaration was a two-page document containing the same "Acknowledgement and Agreement" language contained in the final two pages of the handbook. Above that language the document stated, "Trinity, Fiona, employee id 307893 has acknowledged the following and clicked the box next to the Acknowledgement statement, then clicked the 'Done' button on 06-JAN-2014." Reagan stated this record was created by "Cigna's internal system" and it signified Trinity had agreed to the policies in the handbook, including the arbitration agreement, on January 6, 2014.

In addition to arguing Trinity had agreed to and was bound by the arbitration provision of the employee handbook, the LINA

5

parties asserted any "gateway" issues concerning the arbitrability of the dispute must be decided by an arbitrator rather than the court.  In support of this argument LINA relied on the following language in the Employment Dispute Arbitration Rules and Procedures:  "The arbitrator will have discretion to resolve any question or dispute that may arise before, during and after the arbitration hearing."  The rules and procedures also state, "When a party asserts in a timely fashion that the matter(s) raised by any other party is (are) not arbitrable, the arbitrator will render a decision on the arbitrability of that issue before the parties conduct discovery or proceed with the claims on the merits.  The arbitrator shall have the power to rule on his/her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."

### 3. *Trinity's Opposition to the Motion*

In opposition to the motion to compel arbitration, Trinity contended she had never agreed to arbitrate claims against LINA.  She also argued that, even if the court found an agreement to arbitrate had been entered, the arbitration provision was procedurally and substantively unconscionable and therefore unenforceable.

In a declaration submitted with her opposition, Trinity stated, "I am certain that I never saw, reviewed, received, submitted, agreed, consented, or signed—electronically, manually or otherwise—Cigna's Arbitration Agreement, Cigna Company's Employment Dispute Arbitration Policy, nor the Cigna's Employment Dispute Arbitration Rules and Procedures neither in 2008 or in 2014 or ever thereafter. . . .  [¶]  . . . I never signed off on any arbitration agreement, electronically or otherwise."  Trinity also stated that, at the time she initially accepted

6

employment at LINA in 2008, "Had I been told that I would be required to enter a contract waiving all my legal rights and access to courts as a condition of my employment with defendants, I would not have accepted that job."

Trinity's opposition also included excerpts from a deposition taken of Reagan, who had been identified by LINA as the person most knowledgeable regarding the arbitration agreement applicable to LINA employees between 2014 and 2019. In his deposition Reagan had provided additional detail surrounding the dissemination of the employee handbook in 2013. He testified each employee was sent an email explaining that he or she needed to "take action." The email included a link to the employee handbook, which the employee was required to click on before he or she could access the intranet page containing the required acknowledgement. Once the employee had opened the handbook and clicked on the acknowledgement, he or she would receive an email confirming their assent to the terms of the handbook. Employees did not have the ability to negotiate terms contained in the handbook; and, if they declined to agree, their employment would be terminated.

Trinity requested the court hold an evidentiary hearing to hear testimony from Trinity and Reagan before ruling on the motion.

4. *The LINA Parties' Reply in Support of Their Motion*

In reply the LINA parties submitted excerpts from Trinity's deposition in which she stated she did not recall receiving the employee handbook in late 2013 or clicking the "Done" button on

the acknowledgement on January 6, 2014.[2]  The LINA parties argued Trinity's failure to recall clicking on the acknowledgement was not sufficient to rebut Reagan's testimony that the auto-generated acknowledgement form containing Trinity's name and employee identification number indicated she had assented to the terms of the employee handbook, including the agreement to arbitrate disputes.  The LINA parties also argued the arbitration agreement was neither procedurally nor substantively unconscionable and opposed the request for an evidentiary hearing.

     5. *The Evidentiary Hearing*

At a hearing on August 10, 2020 the court heard argument regarding whether an evidentiary hearing was warranted.  After the court indicated it was inclined to hold an evidentiary hearing, LINA's counsel requested guidance from the court regarding what testimony would be helpful, stating, "Both sides have

---

[2]     After Trinity testified she had no recollection of having clicked the box on the acknowledgement statement on January 6, 2014, LINA's counsel asked, "And again, is that something that you just don't have a recollection one way or the other, or are you stating affirmatively that this never happened and it was—and this is fraudulent?"  After an objection from her counsel, Trinity answered, "No, I do not recall clicking the 'Done' box."  LINA's counsel again asked, "Are you denying that that happened, or you simply don't recall it?"  After an additional objection from Trinity's counsel, Trinity responded, "I don't recall clicking the 'Done' button."  LINA's counsel tried again, "Is it something that you just don't recall what you did in January of 2016 [*sic*], or are you denying that you did it?"  Trinity's counsel objected and, after some colloquy between counsel, Trinity said, "I don't.  I just don't recall."

8

conducted depositions.  We both submitted deposition testimony and declarations. . . .  Because there are conflicting facts in terms of whether Ms. Trinity executed the acknowledgement and agreement [in] January 2014, I'm not entirely certain what would be most beneficial to the court in terms of establishing the credibility issue that you want to have determined for the evidentiary hearing."  The court explained, "Because of the fact that there has been some discovery done, I need to be able to assess the credibility of the witnesses, in particular to make a determination as to whether or not there was an agreement to arbitrate."

The court granted Trinity's request for an evidentiary hearing, which was held on January 15, 2021.  Both Reagan and Trinity testified.  Reagan's testimony was generally consistent with his declaration and deposition testimony regarding the process by which LINA employees received and acknowledged the employee handbook.  He confirmed that, after an employee clicked the button agreeing to the terms outlined in the handbook, an email would be sent to the employee confirming his or her action.  When asked whether such an email exists confirming Trinity agreed to the terms in the 2013 handbook, Reagan answered, "I recall that they were looked for, and I don't believe they were found.  If she deleted them, they'd be gone.  They're so old, they may not be attainable."  In regard to the auto-generated confirmation pages indicating the handbook had been acknowledged by a particular employee, Reagan testified he did not know the name of the computer program that generated the confirmations, where or how they were stored, who had access to the program or how a particular record could be accessed or retrieved.

Trinity testified in the afternoon session of the hearing. Her testimony is not in the record on appeal because no court reporter was present and the LINA parties have not provided an agreed or settled statement.[3]

6. *The Court's Order Denying the Motion To Compel Arbitration*

After taking the matter under submission, on April 21, 2021 the trial court denied the LINA parties' motion to compel arbitration, finding the LINA parties had failed to prove Trinity agreed to the arbitration provision in the employee handbook. The court emphasized that, despite Reagan's testimony an email confirmation would have been sent to Trinity upon her agreement to the handbook's terms, no such email was produced

---

[3] Trinity has moved to dismiss the appeal based on the LINA parties' failure to include an agreed or settled statement containing a description of Trinity's testimony—indeed, the LINA parties' opening and reply briefs fail to even mention that Trinity testified at the hearing. In its opposition to the motion the LINA parties argue the testimony is immaterial because there are no disputed issues of fact upon which Trinity's testimony could bear, a somewhat surprising (not to mention disingenuous) contention given LINA's counsel's observation in August 2020 that there were "conflicting facts" and the trial court's statement it needed to make a credibility determination. The LINA parties also argue Trinity's testimony during the hearing is immaterial because there is already evidence in the record that Trinity denied agreeing to arbitrate her claims. The LINA parties have cited to no authority, nor are we aware of any, that excuses inclusion in the appellate record of material evidence because it is arguably cumulative. While the LINA parties' omissions and lack of candor are troubling, we exercise our discretion to address the appeal on the merits and decline to dismiss.

by LINA, nor could Reagan confirm whether such an email existed.  The court further found the agreement would have been unenforceable even if it had been entered because it was procedurally and substantively unconscionable.

## DISCUSSION

### 1.  *Governing Law and Standard of Review*

Code of Civil Procedure section 1281.2 requires the superior court to order arbitration of a controversy "[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate such controversy . . . if it determines that an agreement to arbitrate the controversy exists."  As the language of this section makes plain, the threshold question presented by every petition to compel arbitration is whether an agreement to arbitrate exists. (*American Express Co. v. Italian Colors Restaurant* (2013) 570 U.S. 228 [it is an "overarching principle that arbitration is a matter of contract"]; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*) [""a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit""]; *Esparza v. Sand & Sea, Inc.* (2016) 2 Cal.App.5th 781, 787 ["[t]here is a strong public policy favoring contractual arbitration, but that policy does not extend to parties who have not agreed to arbitrate"].)

The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence an agreement to arbitrate a dispute exists.  (*Pinnacle, supra*, 55 Cal.4th at p. 236; *Rosenthal v. Great Western Fin. Securities Corp.* (1996)

11

14 Cal.4th 394, 413; *Nixon v. AmeriHome Mortgage Co., LLC* (2021) 67 Cal.App.5th 934, 946.)  To carry this burden of persuasion the moving party must first produce "prima facie evidence of a written agreement to arbitrate the controversy." (*Rosenthal,* at p. 413; accord, *Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 165 (*Gamboa*).)  "If the moving party meets its initial prima facie burden and the opposing party disputes the agreement, then . . . the opposing party bears the burden of producing evidence to challenge the authenticity of the agreement." (*Gamboa*, at p. 165; accord, *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972; *Rosenthal*, at p. 413.)  If the opposing party produces such evidence, then "the moving party must establish with admissible evidence a valid arbitration agreement between the parties." (*Gamboa,* at p. 165.)  Despite the shifting burden of production, "[t]he burden of proving the agreement by a preponderance of the evidence remains with the moving party." (*Id.* at pp. 165-166; *Rosenthal*, at p. 413.)

Absent conflicting evidence, we review de novo the trial court's interpretation of an arbitration agreement, including the determination whether it is enforceable on unconscionability grounds.  (*Rosenthal v. Great Western Fin. Securities Corp.*, *supra,* 14 Cal.4th at p. 413; *Gamboa, supra,* 72 Cal.App.5th at p. 166; *Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1277.)

Where the trial court's ruling is based on a finding of fact, we review the decision for substantial evidence.  (*Gamboa, supra,* 72 Cal.App.5th at p. 166; *Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1066 (*Fabian*).)  Under this deferential standard, "'[A]ll factual matters will be viewed most favorably to

12

the prevailing party [citations] and in support of the judgment.'" (*Campbell v. Southern Pacific Co.* (1978) 22 Cal.3d 51, 60; accord, *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 571; see *Nissan Motor Acceptance Cases* (2021) 63 Cal.App.5th 793, 818 ["We must not review the evidence to determine whether substantial evidence supports the losing party's version of the evidence. Instead, we must determine if there is any substantial evidenced, contradicted or uncontradicted, to support the trial court's findings"].)

However, "[w]hen, as here, the court's order denying a motion to compel arbitration is based on the court's finding that petitioner failed to carry its burden of proof, the question for the reviewing court is whether that finding was erroneous as a matter of law." (*Fabian, supra,* 42 Cal.App.5th at p. 1067; see also *Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838 ["'where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law'"].) "'Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Dreyer's Grand Ice Cream, Inc.*, at p. 838; accord, *Phipps v. Copeland Corp. LLC* (2021) 64 Cal.App.5th 319, 333; *Fabian,* at p. 1067; *Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978-979; see *In re R.V.* (2015) 61 Cal.4th 181, 201 [where party fails to meet its burden on an issue in the trial court, "the inquiry on appeal is whether the weight and character of the

evidence . . . was such that the [trial] court could not reasonably reject it"].)

2. *The Trial Court Had Authority To Determine Whether the Parties Agreed To Arbitrate*

As discussed, the Cigna arbitration employment dispute rules and procedures referred to in the employee handbook stated the arbitrator "will have discretion to resolve any question or dispute that may arise before, during and after the arbitration hearing" and "shall have the power to rule on his/her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Based on this language the LINA parties contend the trial court had no authority to determine whether Trinity agreed to the arbitration provision in the handbook. Rather, they argue, any dispute regarding whether an agreement to arbitrate exists must be decided by the arbitrator.

The LINA parties are generally correct that "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also '"gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" (*Henry Schein, Inc. v. Archer & White Sales, Inc.* (2019) __ U.S. __ [139 S.Ct. 524, 529 (*Henry Schein, Inc.*)]; accord, *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 68-69; *Banc of California, National Assn. v. Superior Court* (2021) 69 Cal.App.5th 357, 366-367.) "To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists. See 9 U.S.C. § 2. But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a

14

court may not decide the arbitrability issue." (*Henry Schein, Inc.*, at p. 530.)

Accordingly, "when the parties have clearly and unmistakably agreed to delegate questions regarding the validity of the arbitration clause to the arbitrator[,] . . . [those] delegation clauses are generally enforceable according to their terms." (*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.* (2018) 22 Cal.App.5th 1096, 1108; see *AT&T Technologies, Inc. v. Communications Workers of America* (1986) 475 U.S. 643, 649 ["[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator"]; *Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 766 [same].) Thus, when a party "is not denying that it agreed to the arbitration clause, but instead it is claiming some other defense to enforcement of the arbitration clause—e.g., illegality or fraud in the inducement—then the court must enforce the 'arbitrability' portion of the arbitration clause by compelling the parties to submit that defense to arbitration." (*Bruni v. Didion* (2008) 160 Cal.App.4th 1272, 1287; accord, *Banc of California,* at p. 369 [delegation provision will be enforced when parties dispute whether claims "fell within the scope of a specific contract"].)

Notwithstanding a provision that clearly and unmistakably delegates arbitrability issues to the arbitrator, if a party "is claiming that it never agreed to the arbitration clause at all—e.g., if it is claiming forgery or fraud in the factum—then the court must consider that claim." (*Bruni v. Didion, supra,* 160 Cal.App.4th at p. 1287; accord, *Mendoza v. Trans Valley Transport, supra*, 75 Cal.App.5th at p. 774 ["despite the existence of a broadly worded delegation clause such as that before us,

15

courts have held that certain gateway issues are for a court to decide, including whether the parties entered into an agreement to arbitrate at all"]; *Najarro v. Superior Court* (2021) 70 Cal.App.5th 871, 879 ["we must enforce the delegation clause unless we conclude that no agreement between the contracting parties ever existed due to a lack of mutual assent"]; see also *Banc of California, National Assn. v. Superior Court, supra,* 69 Cal.App.5th at p. 366, fn. 4 ["under either the [Federal Arbitration Act] or the [California Arbitration Act], it was for the trial court in the first instance to decide whether the parties agreed to arbitrate their dispute"]; *Ahlstrom v. DHI Mortgage Company, Ltd., L.P.* (9th Cir. 2021) 21 F.4th 631, 635 ["[Defendant] argues that, like issues of validity and arbitrability, parties may also agree to delegate issues of formation to an arbitrator. We do not agree. [Citations.] . . . As the Supreme Court has recognized, a court should order arbitration only if it is convinced an agreement has been formed"]; *Williams v. Medley Opportunity Fund II, LP* (3rd Cir. 2020) 965 F.3d 229, 237, fn. 7 [rejecting defendants' contention that *Henry Schein, Inc., supra,* 139 S.Ct. 524 "establishes a categorical rule that, when an agreement includes a delegation clause, 'a court possesses no power to decide the arbitrability issue.' . . . *Henry Schein* 'did not change . . . the rule that courts must first decide whether an arbitration agreement exists at all"].)

This approach is consistent with the principle that arbitration is a matter of contract—a party cannot be compelled to arbitrate pursuant to a contract to which the party never agreed. (See *Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 254 ["[o]ne such logical condition precedent [to arbitration] is whether, in fact, the parties agreed to arbitrate at all; it makes

16

no sense to compel parties to go before an arbitrator without first determining they agreed to do so"]; *Bruni,* at p. 1291 [when party asserts it never agreed to arbitration provisions, it "cannot be required to arbitrate *anything*—not even arbitrability—until a court has made a threshold determination that [it] did, in fact, agree to arbitrate *something*"].)  Accordingly, the trial court did not err by deciding whether Trinity had entered into an arbitration agreement rather than requiring her to arbitrate the issue.

3. *The Evidence Did Not Compel a Finding That Trinity Agreed To Arbitrate*

Insisting the auto-generated acknowledgement dated January 6, 2014 is undisputed and constitutes conclusive evidence Trinity's unique username and password were used to agree electronically to the terms of the arbitration agreement in the Cigna employee handbook, the LINA parties argue the trial court erred in ruling there was no agreement to arbitrate.  Yet whether the auto-generated acknowledgement presented by the LINA parties was, in fact, generated as a result of Trinity's actions was precisely what was at issue before the trial court: Trinity stated unequivocally in her declaration that she never saw or consented to the arbitration agreement.

The LINA parties attempt to negate the factual dispute created by Trinity's testimony by arguing it was "directly contradicted" by Trinity's deposition testimony in which she stated she did not recall whether she had clicked on the "Done" button on the handbook acknowledgement.  The LINA parties' argument is doubly flawed.

First, Trinity's testimony that she "did not recall clicking the 'Done' box" did not necessarily contradict her earlier

17

testimony she never did so—it is not inconsistent that having failed to do something, one would have no direct recollection of not doing it.  Moreover, any possible inconsistency between Trinity's declaration and deposition testimony was properly resolved by the trial court.  The court considered all the evidence, including, critically, Trinity's live testimony during the evidentiary hearing, the contents of which LINA elected not to provide to us, and found credible Trinity's statement she never agreed to arbitrate.  We may not reweigh the evidence and are bound by the trial court's credibility determinations.  (*Tribeca Companies, LLC v. First American Title Ins. Co.* (2015) 239 Cal.App.4th 1088, 1102; *Fabian, supra,* 42 Cal.App.5th at p. 1067.)

Second, even if her deposition testimony was understood as something less than an unequivocal denial of entering the agreement, here, in the absence of a signed agreement (either handwritten or electronic), Trinity's testimony that she did not recall agreeing to arbitrate by electronically clicking a "Done" box, coupled with her declaration that she would not have accepted the job in 2008 had she known of the arbitration clause and her unknown testimony at the hearing,[4] was sufficient to

---

[4]      In the absence of any record of Trinity's testimony at the evidentiary hearing, we must presume that testimony supports the court's findings.  (See *Shenefield v. Shenefield* (2022) 75 Cal.App.5th 619, 633, fn. 12 ["[w]hen there is no reporter's transcript and no error is evident from the face of the appellate record, we presume that the unreported trial testimony would demonstrate absence of error"]; *Estate of Fain* (1999) 75 Cal.App.4th 973, 992 ["Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be conclusively presumed

carry her burden in opposing a motion to compel. (See *Gamboa, supra*, 72 Cal.App.5th at p. 167 ["Gamboa likewise met her burden on the second step by filing an opposing declaration, saying she did not recall the agreement and would not have signed it if she had been aware of it"]; see also *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 846 ["[t]hough Ruiz did not deny that the electronic signature on the 2011 agreement was his, he claimed he did not recall signing the 2011 agreement and would not have signed it had it been presented to him. In the face of Ruiz's failure to recall signing the 2011 agreement, Moss Bros. had the burden of proving by a preponderance of the evidence that the electronic signature was authentic"].)

Trinity having carried her burden to challenge the authenticity of the agreement, the burden shifted back to the LINA parties to prove by a preponderance of the evidence that a contract was formed. The court did not err in finding they had failed to do so. The LINA parties' evidence was neither uncontradicted nor of such character and weight as to leave no room for a judicial determination that it was insufficient. Despite Reagan's testimony the auto-generated acknowledgement indicated Trinity had used her unique credentials to electronically agree to the employee handbook, Reagan could not explain the apparent nonexistence of the email that should have been sent to Trinity confirming her action. Reagan testified

_____

correct as to all evidentiary matters. To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error. [Citation.] The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence"], italics omitted.)

Trinity may have deleted the email or it could have been too old to be retrieved. However, those statements were mere speculation—Reagan professed no knowledge of the company's document retention policies or backup procedures for deleted emails. Reagan's testimony was further undermined by the fact he had no understanding of how the acknowledgement records were generated, stored or retrieved, including who had access to the records and whether they could be manually created or altered. In other words, there was no testimony that Trinity's own actions were the exclusive way an acknowledgement form bearing her credentials could be created. (See *Fabian, supra,* 42 Cal.App.5th at p. 1070 [movant failed to prove employee electronically signed arbitration agreement where witness "did not suggest how the electronic signature could have only been placed on the Contract by [plaintiff]"]; *Ruiz v. Moss Bros. Auto Group, Inc., supra,* 232 Cal.App.4th at p. 844 [same].) On this record, the evidence does not compel a finding that Trinity agreed to arbitrate her claims.

## DISPOSITION

The order denying the motion to compel arbitration is affirmed. Trinity is to recover her costs on appeal.


PERLUSS, P. J.

We concur:



SEGAL, J.                              FEUER, J.

20

Filed: 5/23/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| FIONA TRINITY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA et al.,<br><br>    Defendants and Appellants. | B312302<br><br>(Los Angeles County Super. Ct. No. 20STCV10051)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION (NO CHANGE IN APPELLATE JUDGMENT) |

THE COURT:

The opinion in this case filed May 17, 2022 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), respondent's request pursuant to California Rules of Court, rule 8.1120(a) for publication is granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

_____

PERLUSS, P. J.        SEGAL, J.        FEUER, J.