Filed 8/22/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JANUARY ESPARZA, | B268420 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SC122803) |
| v. | |
| SAND & SEA, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gerald Rosenberg, Judge. Affirmed.

Telep Law, Desiree Telep, Tina Dao for Plaintiff and Respondent.

Greenberg Traurig, Mark D. Kemple, Karin L. Bohmholdt and Nicholas A. Insogna for Defendants and Appellants.

**INTRODUCTION**

The question in this case is whether an arbitration provision in an employee handbook is legally enforceable. The employee handbook containing the arbitration provision included a welcome letter as the first page, which stated, "[T]his handbook is not intended to be a contract (express or implied), nor is it intended to otherwise create any legally enforceable obligations on the part of the Company or its employees." The employee signed a form acknowledging she had received the handbook, which mentioned the arbitration provision as one of the "policies, practices, and procedures" of the company. The acknowledgement form did not state that the employee agreed to the arbitration provision, and expressly recognized that the employee had not read the handbook at the time she signed the form. Under these circumstances, we find that the arbitration provision in the employee handbook did not create an enforceable agreement to arbitrate. We therefore affirm the trial court's denial of the employer's petition to compel arbitration.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff and respondent January Esparza began employment at Shore Hotel on November 19, 2012. On her first day of work, Esparza was given an employee handbook. The first page of the handbook stated:

"Welcome to Shore Hotel!

"We are excited to have you as a member of our team. At Shore Hotel, every team member plays a vital role in the success of our organization and we look forward to your many contributions.

\* \* \*

"This handbook will give you both an overview and a better understanding of Shore Hotel and the core policies by which we operate. . . . You should never hesitate to ask questions or speak directly to your supervisor or the Human Resources department.

"This handbook replaces and supersedes all prior verbal descriptions, written policies and other written materials and memorandum [sic] that may have been

2

distributed; unless otherwise notes [sic]. *Employees should understand, however, that this handbook is not intended to be a contract (express or implied), nor is it intended to otherwise create any legally enforceable obligations on the part of the Company or its employees.* [Emphasis added.] The Company reserves the right to revise, modify, delete, or add to any and all policies, procedures, work rules, or benefits stated in this handbook or in any other document at any time (except as to its at-will employment policy) without prior notice. . . .

"Welcome aboard!"

We will refer to this page of the employee handbook as the "welcome letter."

A section titled "Agreement to Arbitrate" spanned pages 3 and 4 of the employee handbook. Unlike the rest of the employee handbook, this section was printed in all capital letters, and it was written in the first person from the employee's perspective. The section began, "I further agree and acknowledge that the company and I will utilize binding arbitration to resolve all disputes that may arise out of the employment context. Both the company and I agree that any claim, dispute, and/or controversy that either I may have against the company . . . or the company may have against me . . . shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act. . . ." The section discussed the scope of disputes under the agreement, the qualifications for an arbitrator, and other procedural issues relating to arbitration. It continued, "I understand and agree to this binding arbitration provision, and both I and the company give up our right to trial by jury of any claim I or the company may have against each other."

The handbook then explained employment basics such as the company anti-harassment policy, the attendance policy, the dress code, and payroll. The last two pages of the 52-page employee handbook consisted of identical copies of a "policy acknowledgement," one labeled as the employer copy, and one labeled as the employee copy. The policy acknowledgement stated:

3

"This handbook is designed to provide information to employees of Sand & Sea, Inc. (Shore Hotel) regarding various policies, practices and procedures that apply to them including our Arbitration Agreement. Shore Hotel and its employees acknowledge that their relationship is 'at will' and that either party can terminate that relationship at any time for any reason. Shore Hotel reserves the right to modify, alter or eliminate any and all of the policies and procedures set forth herein at any time, for any reason, with or without notice. *Neither this manual nor its contents constitute, in whole or in part, either an express or implied contract of employment with Shore Hotel or any employee.* [Emphasis added.]

"While this handbook is not intended to state all of the conditions of employment and all of the principles which help to guide our people in the performance of their duties, it will give you general information in regard to certain policies and benefits related to your employment.

\* \* \*

"I acknowledge that I have received Sand & Sea Inc.'s (Shore Hotel) Employee Handbook. *I also acknowledge that I am expected to have read the Employee Handbook in its entirety no longer after one week after receiving it*, and that I have been given ample opportunity to ask any questions I have pertaining to the contents of the employee handbook. I also understand that this Handbook is Company property and that it must be returned upon termination of my employment. I understand that failure to abide by these provisions may result in disciplinary action up to and including the termination of my employment."

Esparza signed the policy acknowledgement on November 19, 2012, her first day of work. Esparza's employment with Shore Hotel ended on August 2, 2013. On July 8, 2014, Esparza filed a complaint against Shore Hotel; she later added Steve Farzam, identified as the owner of the hotel, as a defendant. In her first amended complaint, which was the operative complaint below, Esparza alleged causes of action for sexual

4

harassment, sex discrimination, wrongful termination, and intentional infliction of emotional distress.

On July 28, 2015, more than a year after Esparza first filed her complaint, defendants filed a petition to compel arbitration. Defendants argued that Esparza's claims arose from her employment at Shore Hotel, and "because Plaintiff signed her assent to a conspicuous and unambiguous agreement to arbitrate claims of the very type at issue here, arbitration is mandatory." Defendants acknowledged that both parties had served discovery requests, and defendants' demurrer to the first amended complaint was pending before the court. With their motion, defendants submitted the entire employee handbook, including the welcome letter and the policy agreement signed by Esparza.

Esparza opposed defendants' petition to compel arbitration. She argued, "Ms. Esparza did not assent or agree to arbitration . . . . Ms. Esparza simply acknowledged that she received Shore Hotel's Employee Handbook, and she also acknowledged that she was to have read the Employee Handbook one week after receiving it." Esparza also argued that the arbitration provision was procedurally and substantively unconscionable, and that defendants forfeited their right to demand arbitration by engaging in litigation for a year before seeking to enforce the arbitration provision.

In their reply, defendants argued that Esparza "freely agreed to arbitrate all disputes arising from her employment." They argued that the policy acknowledgment Esparza signed "expressly incorporated the employment terms and conditions of employment [sic] set forth in the preceding pages." Because Esparza had a week to review the handbook, defendants argued, she had the opportunity to "accept employment subject to [the handbook's] terms, or to seek employment elsewhere." Defendants also argued that the terms of the employment agreement were not unconscionable, and that defendants' participation in the very early stages of litigation should not be deemed a forfeiture of their right to arbitrate.

The trial court denied defendants' petition. It held, in full, "Defendants' motion to compel arbitration is denied. [¶] There is no agreement to arbitrate. [¶] The Policy

Acknowledgement signed by plaintiff does not impose an obligation to arbitrate nor is the arbitration provision in the handbook incorporated by reference. To the contrary, the acknowledgement states that the handbook is not an employment agreement."

Defendants timely appealed.

## STANDARD OF REVIEW

There is a strong public policy favoring contractual arbitration, but that policy does not extend to parties who have not agreed to arbitrate. (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 704 (*Molecular Analytical Systems*).) To establish a valid agreement to arbitrate disputes, "[t]he petitioner bears the burden of proving the existence of a valid arbitration agreement by [a] preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.) California law governs the determination as to whether an agreement was reached. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 409-410 (*Rosenthal*).) "[W]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable." (*Id.* at p. 413; see also Code Civ. Proc., § 1281.2 ["the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists"].)

An order denying a petition to compel arbitration is an appealable order. (Code Civ. Proc., § 1294, subd. (a).) "When 'the language of an arbitration provision is not in dispute, the trial court's decision as to arbitrability is subject to de novo review.' [Citation.] Thus, in cases where 'no conflicting extrinsic evidence is introduced to aid the interpretation of an agreement to arbitrate, the Court of Appeal reviews de novo a trial court's ruling on a petition to compel arbitration.' [Citation.]" (*Molecular Analytical*

6

*Systems, supra,* 186 Cal.App.4th at p. 707.) Here, the evidence is not in dispute, and therefore we review the trial court's decision de novo.

**DISCUSSION**

Defendants argue that Esparza's signature on the policy acknowledgement indicates that "Plaintiff expressly acknowledged that the terms and conditions in the Employee Handbook would bind her should she accept employment with Shore Hotel." As a result, defendants argue, they presented prima facie evidence of an agreement to arbitrate, and the trial court erred by concluding that there was no agreement. The language of the policy acknowledgement does not support defendants' conclusion.

"'In California, "[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate." [Citations.]' (*Pinnacle v. Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236, [145 Cal.Rptr.3d 514, 282 P.3d 1217].) 'An essential element of any contract is the consent of the parties, or mutual assent.' [Citation.] (*Donovan v. RRL Corp.* (2001) 26 Cal.4th 261, 270 [109 Cal.Rptr.2d 807, 27 P.3d 702].) Further, the consent of the parties to a contract must be communicated by each party to the other. (Civ.Code, § 1565, subd. 3.) 'Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings.' (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 141 [127 Cal.Rptr.2d 145], disapproved on other grounds in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 524, [113 Cal.Rptr.3d 327, 235 P.3d 988].)" (*Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 173 (*Serafin*).)

The issue here is whether the employee handbook created a mutual agreement to arbitrate. *Mitri v. Arnel Management Co.* (2007) 157 Cal.App.4th 1164 (*Mitri*), which neither party cites, is on point in two respects. In that case, the defendant employer supported its petition to compel arbitration with documents showing that its employee handbook contained a section titled "Arbitration Agreement," and that the plaintiff

7

employees acknowledged receiving the employee handbook. (*Id*. at pp. 1167-1168.) The arbitration agreement in the handbook said, "As a condition of employment, all employees are required to sign an arbitration agreement," and "Employees will be provided a copy of their signed arbitration agreement." (*Ibid*.) However, the employer did not produce evidence of any signed arbitration agreements. (*Ibid*.) The trial court denied the employer's petition, and the defendants appealed.

The Court of Appeal held that the employer failed to establish the existence of an agreement to arbitrate, citing two separate bases relevant here. The employer argued, as defendants do here, that the employees' acknowledgement that they received the handbook, coupled with the fact that the handbook contained an arbitration provision, was sufficient to show that the employees agreed to the arbitration provision. The *Mitri* court rejected that argument because the handbook's reference to a separate arbitration agreement that the employees were required to sign "completely undermines any argument by defendants [that] the provision in the handbook itself was intended to constitute an arbitration agreement between [the employer] and its employees." (*Mitri, supra*, 157 Cal.App.4th at pp. 1170-1171.) In addition, the handbook's statement that employees would be provided with a copy of their signed arbitration agreement "reinforc[ed] an intent to have employees sign a separate arbitration agreement to effectuate [the employer's] policy of arbitrating employment claims." (*Id*. at p. 1171.) The language of the handbook itself therefore suggested that the handbook did not create an agreement between the parties.

Here, the handbook also indicated to the reader that it was not intended to establish an agreement.[1] The welcome letter at the beginning of the handbook explicitly stated that "this handbook is not intended to be a contract (express or implied), nor is it intended to otherwise create any legally enforceable obligations on the part of the

---

[1]We note that this case differs from *Mitri* in that defendant asserts that the handbook and policy acknowledgement are "a single integrated document" so that no separate arbitration agreement was required.

Company or its employees." This statement undermines defendants' argument that the handbook and its arbitration provision actually *was* intended to create a legally enforceable obligation to arbitrate.

Defendants argue that welcome letter's statement that the handbook did not create a contract "was intended only to disclaim that the Employee Handbook creates an *employment* contract" and that the policy acknowledgement "clarifies" this by stating that the handbook is not a "contract of employment." However, the language of the welcome letter was extremely broad, stating that the handbook "is not intended to . . . create any legally enforceable obligations." Defendants now ask us to find that the arbitration provision *did* create a legally enforceable obligation, despite the express language to the contrary. We decline to do so. Mutual assent is determined by the reasonable meaning of the parties' words and acts. (*Serafin, supra,* 235 Cal.App.4th at p. 173.) When language in a contract is clear and explicit, that language governs interpretation. (Civ. Code, § 1638.) To the extent there is any ambiguity in this language we construe it against defendants, the drafters of the language. (*Rebolledo v. Tilly's, Inc*. (2014) 228 Cal.App.4th 900, 913.) "If a party can show that it did not know it was signing a contract, or that it did not enter into a contract at all, both the contract and its arbitration clause are void for lack of mutual assent." (*Saint Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1200.) Here, the reasonable interpretation of the welcome letter is that it meant exactly what it said—that the handbook was not intended to create "any legally enforceable obligations," including a legally enforceable obligation to arbitrate.

The second basis for the *Mitri* court's holding focused on the language of the acknowledgement form. The acknowledgement form in *Mitri* stated that the handbook was intended to be "'an excellent resource for employees with questions about the Company,'" and "'[e]mployees are encouraged to carefully review the Employee Handbook and become familiar with the contents and periodic updates.'" (*Id*. at p. 1173.) The court noted, "Conspicuously absent from the acknowledgment receipt form is any

9

reference to an *agreement* by the employee to abide by the employee handbook's arbitration agreement provision." (*Mitri*, *supra*, 157 Cal.App.4th at p. 1173.) The court concluded, "We cannot and will not create a term of a contract between the parties that the evidence does not show was ever agreed upon by the parties. . . . Taken as a whole, the documents submitted by defendants in support of their motion do not constitute an arbitration agreement." (*Ibid*.)

Here, the policy acknowledgement that Esparza signed also did not state that she agreed to abide by the arbitration agreement within the handbook. Instead, the policy acknowledgement stated that the handbook "is designed to provide information to employees . . . regarding policies, practices and procedures that apply to them including our Arbitration Agreement." As in *Mitri*, therefore, the policy acknowledgement suggests that it is merely informational. In addition, the policy acknowledgement explicitly recognized that Esparza had not read the handbook yet. Presumably, therefore, Esparza would not know the contents of the handbook or the arbitration provision at the time she signed the form. We have no basis to assume that Esparza agreed to be bound by something she had not read. (See, e.g., *Rosenthal v. Great Western Fin. Securities Corp*., *supra*, 14 Cal.4th at p. 421 [a contract is void where a party, before making the agreement, lacks a reasonable opportunity to learn its terms].)

Defendants argue that because Esparza was expected to read the handbook within a week, and she continued to work at Shore Hotel after that week, she must have impliedly agreed to the arbitration provision. But "'[a]bsent a clear agreement to submit disputes to arbitration, courts will not infer that the right to a jury trial has been waived.' [Citations.]" (*Adajar v. RWR Homes, Inc*. (2008) 160 Cal.App.4th 563, 569.) Furthermore, this case is unlike *Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373 (*Harris*), where the arbitration provision, set apart from the employee handbook as an appendix, stated, "If Employee voluntarily continues his/her employment with TAP [Worldwide, LLC] after the effective date of this Policy [or January 1, 2010], Employee will be deemed to have knowingly and voluntarily consented to and accepted all of the

10

terms and conditions set forth herein without exception." (*Harris*, at p. 379.) Based on this language, the court held that "upon commencing employment, the employee was deemed to have consented to the agreement to arbitrate by virtue of acceptance of the Employee Handbook. Plaintiff cannot have it both ways, acceptance of the at will job offer with all its emoluments and no responsibility to abide by one of its express conditions." (*Id.* at p. 384.) No such contractual language existed in the employee handbook here. To the contrary, the welcome letter declared that the handbook did not "create any legally enforceable obligations," the policy acknowledgement said the handbook provided "general information" about employer policies, and there was no stated requirement that the employee agree to any of these policies. These facts do not support a conclusion that the parties mutually assented to be bound by the arbitration provision in the handbook.

"To support a conclusion that an employee has relinquished his or her right to assert an employment-related claim in court, there must be more than a boilerplate arbitration clause buried in a lengthy employee handbook given to new employees. At a minimum, there should be a specific reference to the duty to arbitrate employment-related disputes in the acknowledgment of receipt form signed by the employee at commencement of employment." (*Sparks v. Vista Del Mar Child and Family Services* (2012) 207 Cal.App.4th 1511, 1522, abrogated on other grounds by *Harris, supra,* at p. 390.) Defendants argue that because the policy acknowledgement referenced the arbitration agreement, it was binding on Esparza. However, the policy acknowledgement only referenced the arbitration agreement as one of the "various policies, practices, and procedures that apply" to employees. It did not indicate that Esparza agreed to be bound by it. Rather, the end of that paragraph stated, "Neither this manual nor its contents constitute, in whole or in part, either an express or implied contract of employment," which, along with the language in the welcome letter discussed above, suggested that nothing in the handbook was legally binding on the parties.

11

In addition, the policy acknowledgement stated that the handbook was company property that had to be returned when Esparza's employment terminated. Its last sentence, just above Esparza's signature, stated that "failure to abide by these provisions may result in disciplinary action up to and including the termination of my employment." The policy acknowledgement gave Esparza no notice that it created an agreement binding her to any of the handbook provisions *after* her employment at Shore Hotel terminated. Coupled with the language acknowledging that Esparza had not read the handbook yet (and therefore had not read the arbitration provision), the policy acknowledgement does not support defendants' argument that Esparza agreed to the arbitration provision when she signed the policy acknowledgment.

Defendants argue that the trial court erred when it reasoned that there was no arbitration agreement in part because the policy acknowledgement "is not an employment agreement." They point out that an employment contract is not necessary to establish an enforceable arbitration agreement, and we agree. (See, e.g., *Sanchez v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398, 401-402.) But this critique of the court's reasoning does not affect defendants' burden to demonstrate the existence of an enforceable arbitration agreement. Moreover, we review the trial court's ruling, not its reasoning. (*Orcilla v. Big Sur, Inc*. (2016) 244 Cal.App.4th 982, 994.) The court's statement about an employment agreement does not undermine its ruling that the handbook and policy acknowledgement do not evidence a mutual agreement to arbitrate.

Defendants urge us to follow *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199 and *Serpa v. California Surety Investigations, Inc*. (2013) 215 Cal.App.4th 695, which, according to defendants, demonstrate enforceable arbitration agreements in employee handbooks under similar circumstances. These cases are not on point. In *24 Hour Fitness*, the Court of Appeal considered whether an arbitration agreement between an employee and employer was enforceable against defendants other than the employer, and whether the agreement was unconscionable. In *Serpa*, the court also considered whether an arbitration agreement between an employee and employer

12

was unconscionable. Neither of these cases considered whether the parties had reached an agreement to arbitrate in the first instance, which is the question here. Instead, they only considered the applicability of defenses to the enforceability of existing arbitration agreements. Cases are not authority for propositions not considered. (See *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 680.)

In sum, the handbook, including the welcome letter and policy acknowledgment, was insufficient to meet defendants' burden to demonstrate an agreement to arbitrate. The trial court did not err by denying defendants' petition to compel arbitration.

## DISPOSITION

The trial court's order denying defendants' petition to compel arbitration is affirmed. Esparza is entitled to costs on appeal.

## CERTIFIED FOR PUBLICATION


COLLINS, J.


We concur:



EPSTEIN, P. J.



WILLHITE, J.