Filed 8/25/23  Theobald v. Santa Monica Seafood Co. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BRAD THEOBALD,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SANTA MONICA SEAFOOD COMPANY,<br><br>    Defendant and Appellant. | B324090<br><br>(Los Angeles County Super. Ct. No. 22STCV17589) |

APPEAL from an order of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge.  Reversed with directions.

Allen Matkins Leck Gamble Mallory & Natsis, Grant P. Alexander and Shauna E. Woods for Defendant and Appellant.

Cabanday Law Group and Orlando F. Cabanday for Plaintiff and Respondent.

_____

Appellant Santa Monica Seafood Company (SMS) moved to compel arbitration of an employment lawsuit filed by respondent Brad Theobald. SMS cited a "Mutual Arbitration Agreement" the parties signed in 2009. The trial court denied SMS's motion.

On de novo review, we conclude that SMS proved the existence of an enforceable arbitration agreement. Changes to SMS's employee handbook in 2011 did not rescind the 2009 arbitration agreement; instead, the handbook reinforced the duty to arbitrate. Theobald's failure to sign a new arbitration agreement after 2011 did not alter his continuing, mandatory duty to arbitrate. We reverse and remand with directions to order the parties to arbitrate their dispute.

## FACTS AND PROCEDURAL HISTORY
### *Theobald Files His Lawsuit*

Theobald worked for SMS for over a decade, as an at-will employee. He was promoted during his tenure but alleges that SMS let him know he would not become a senior manager because "he was an old white man and not an Italian." SMS allegedly fired Theobald in retaliation for his complaints that it mislabeled seafood sold to its customers, sexually harassed female employees, and committed insurance fraud.

Theobald complained to the Equal Employment Opportunity Commission, then filed suit against SMS. He asserts causes of action for discrimination; wrongful termination in violation of public policy; and retaliation for whistleblowing.

### *SMS Moves to Compel Arbitration*

SMS moved to compel arbitration of Theobald's complaint. It argued that he is bound by a Mutual Arbitration Agreement

(Agreement) that the parties signed in 2009.[1]  He is also subject to a 2011 Employee Handbook (Handbook), which requires arbitration.

The Agreement requires arbitration of "any controversy, claim or dispute . . . relating to or arising out of your employment or the cessation of your employment."  Arbitration is the parties' "exclusive remedy" and is binding, covering alleged violations of public policy, discrimination, wrongful termination, or any other employment-related claims, including ones falling under the Fair Employment and Housing Act (FEHA) or any other federal or state laws.

SMS terminated Theobald's employment in 2022.  After he filed a lawsuit, SMS demanded arbitration.  Theobald refused to stipulate to arbitration, claiming SMS revised its arbitration agreement in 2011 and he did not sign the revision.  SMS asserted that the Agreement was not invalidated merely because other employees signed a different arbitration agreement after 2011.

SMS argued that the Federal Arbitration Act (FAA) controls because SMS engages in interstate commerce, with facilities and employees in five states; it does business outside of California.  The FAA requires arbitration unless there are grounds to revoke the Agreement.  SMS agreed that state contract laws determine if an arbitration agreement is valid and enforceable.

---

[1] Theobald agreed to arbitrate when he began working at SMS in 2008; after a hiatus, he restarted at SMS in 2009 and signed the Agreement.

### *Theobald Opposes the Motion to Compel*

Theobald admitted signing the Agreement in 2009.  He argued it is not binding because he "*never agreed to the new arbitration agreement*" in the 2011 Handbook.  Theobald reasoned that the Handbook "cancelled the previous arbitration agreements." (Emphasis omitted.)  He did not sign a new arbitration agreement after 2011.[2]

The Handbook's "Mutual Arbitration of Disputes" clause reads, "any controversy, claim or dispute between you and the Company . . . relating to or arising out of your employment or the cessation of your employment with the Company will be submitted to final and binding arbitration as the exclusive remedy for such controversy, claim or dispute. . . . Possible

---

[2] The Handbook states that SMS "in its sole and absolute discretion, reserves the right to revise, supplement or rescind any of the provisions, policies, procedures, benefits and rules in this Employee Handbook, other than the policies regarding At Will Employment and Mutual Arbitration of Disputes.  If changes are made, a new written policy will be issued and will prevail.  All existing employees are required to execute an Employee Acknowledgement Form and Agreement to At Will Employment and Mutual Mandatory Arbitration of Disputes after receipt and review of this Employee Handbook.  All new employees are required to execute this same Employee Acknowledgement Form prior to beginning work with the Company.  No oral statements or representations can in any way change or alter the provisions of this Employee Handbook.  The Employee Handbook is not an employment contract and is not intended to create a promise or representation of continued employment for any employee.  This Employee Handbook supersedes all prior and/or written policies, procedures, rules, regulations, commitments and practices of the Company."

4

disputes covered by the above include (but are not limited to) unpaid wages, breach of contract, torts, violation of public policy, discrimination, harassment, or any other employment-related claims." The Handbook is available on-line; employees who want a printed copy can request one.

### SMS's Reply

SMS argued that Theobald signed the Agreement. The only grounds to rescind it are unconscionability, unjust contract, fraud or illegality. His failure to sign the Handbook's forms did not cancel the Agreement. The Handbook, like the Agreement, requires arbitration.

### The Court's Ruling

The court denied SMS's motion to arbitrate. Though Theobald signed the Agreement, he "never signed a new agreement. And therefore, there is no new contract." The Handbook "canceled" the Agreement "and required existing employees, including the plaintiff, to sign a new 2011 arbitration agreement," which "wasn't done." SMS appealed the order denying arbitration.

## DISCUSSION

### 1. Appeal and Review

The denial of SMS's motion to arbitrate is an appealable order. (Code Civ. Proc., § 1294, subd. (a).) "The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense . . . . Where, as here, the evidence is not in conflict, we review the trial court's denial of arbitration de novo." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236

5

(*Pinnacle*).) We interpret the Agreement and the Handbook to determine if the parties must arbitrate.

## 2. General Principles

Public policy strongly favors contractual arbitration as an expedient means of dispute resolution; there is " 'a presumption in favor of arbitrability.' " (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125.) "Consequently, courts will ' "indulge every intendment to give effect to such proceedings." ' " (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.) The policy favoring arbitration "does not extend to parties who have not agreed to arbitrate." (*Esparza v. Sand & Sea, Inc.* (2016) 2 Cal.App.5th 781, 787.)

The threshold question is the existence of an agreement to arbitrate. (*Ahern v. Asset Management Consultants, Inc.* (2022) 74 Cal.App.5th 675, 687.) " '[G]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate.' (*Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 420; [citation].) Generally, an arbitration agreement must be memorialized in writing. [Citation.] A party's acceptance of an agreement to arbitrate may be express, as where a party signs the agreement. A signed agreement is not necessary, however, and a party's acceptance may be implied in fact (e.g., *Craig*, at p. 420 [employee's continued employment constitutes acceptance of an arbitration agreement proposed by the employer]) . . . . An arbitration clause within a contract may be binding on a party even if the party never actually read the clause." (*Pinnacle, supra,* 55 Cal.4th at p. 236.)

## 3. The Parties Agreed to Arbitrate Disputes

If a court "determines that an agreement to arbitrate the controversy exists," it "shall order" arbitration unless "[g]rounds exist for rescission of the agreement." (Code Civ. Proc., § 1281.2,

subd. (b).)  Similarly, under the FAA a provision to settle controversies by arbitration is "valid, irrevocable, and enforceable" absent legal or equitable grounds to revoke the agreement.  (9 U.S.C. § 2.)

### a. *The Handbook Did Not Abrogate the Agreement*

Theobald signed the Agreement in 2009, expressly consenting to arbitration.  He does not claim the Agreement was invalid at inception, unconscionable, or too narrow to encompass his claims against SMS.  Instead, he asserts that the Handbook "cancelled" the Agreement.  We disagree.

By its terms, the Handbook "supersedes" prior "policies, procedures, rules, regulations, commitments and practices of the Company."  It does *not* supersede signed, mutual agreements or support Theobald's claim that it "expressly stated that all previous agreements between Appellant and Responded [*sic*] were superseded and a nullity."  The Agreement is not nullified by the Handbook.

Our reading is fortified by another clause in the same paragraph.  It states that SMS "reserves the right to revise, supplement or rescind any of the provisions, policies, procedures, benefits and rules in this Employee Handbook, *other than the policies regarding At Will Employment and Mutual Arbitration of Disputes*."  (Italics added.)  The Handbook thus forbids rescission of arbitration provisions.

Arbitration may be denied "when there are grounds for rescinding the agreement."  (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 973.)  A party may rescind if consent is obtained by mistake, duress, menace, fraud, or undue influence; or consideration for the contract fails or becomes void; or the contract is unlawful or prejudices the public interest.  (Civ. Code, § 1689.)  Neither party to the 2009 Agreement shows grounds for rescission, nor did the trial court identify grounds to

7

rescind. Because the Agreement is "mutual," ostensibly benefiting both Theobald and SMS in a dispute, it cannot be unilaterally terminated by one signatory.

### b. *The Handbook Perpetuated Theobald's Duty to Arbitrate*

Theobald does not deny his familiarity with the Handbook. On the contrary, he concedes that his employment was "subject to (and his continuing employment conditioned on) the terms of the [2011] employment manual." Instead, he declares, "I did not sign the 2011 arbitration agreement and did not agree to [it]." Though he failed to sign anything, Theobald impliedly accepted arbitration by continuing to work at SMS.

"[A]n agreement to arbitrate may be express or implied so long as it is written." (*Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373, 383 (*Harris*).) Anyone who accepts employment under the terms of an employee handbook assents to those terms. (*Id.* at pp. 383–384.) An arbitration clause in a handbook is not illusory simply because the employer may modify the handbook. (*Id.* at p. 385.) When an employee is at-will, as Theobald was, an employer may "unilaterally alter the terms of employment, provided that the alteration does not violate a statute or breach an implied or express contractual agreement." (*Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 620.) The parties had an express contract to arbitrate disputes. The Handbook does not violate the Agreement because it continues to require arbitration.

" '[E]mployers must have a mechanism which allows them to alter the employee handbook to meet the changing needs of both business and employees.' " (*Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 12.) When an employer adopts new policies, an employee's continued employment under the new policies constitutes acceptance of the modification. (*Id.* at p. 15.) "[T]he availability of continuing employment serv[es] as adequate

consideration from the employer." (*Ibid*.) Thus, an arbitration agreement is enforceable if the employer exercises its right to modify its policies because the employer remains bound by the implied covenant of good faith and fair dealing. (*Serafin v. Balco Properties, Ltd., LLC* (2015) 235 Cal.App.4th 165, 176; *Harris, supra,* 248 Cal.App.4th at pp. 389–390.)

SMS has required arbitration of disputes since Theobald started employment in 2008. He executed the Agreement to arbitrate in 2009. Likewise, the Handbook requires arbitration of disputes. Theobald worked for SMS for 14 years, all the while subject to arbitration under the Agreement and the Handbook. His assent to arbitration was express (under the Agreement) and implied when he continued to work at SMS for over a decade *after* the Handbook was modified.

Contrary to Theobald's belief, the Handbook's arbitration clause is mandatory, not "voluntary." It states that any controversy, claim, or dispute "will be submitted to final and binding arbitration . . . as the exclusive remedy." Language that "unambiguously require[s] arbitration as the sole and exclusive remedy" unmistakably waives the right to a judicial forum. (*Volpei v. County of Ventura* (2013) 221 Cal.App.4th 391, 396.)

Theobald invokes the Handbook as grounds for avoiding the Agreement. He cannot claim the Handbook benefits him by "cancelling" his Agreement while simultaneously claiming the mandatory arbitration provisions in the Handbook do not apply to him. He was supposed to execute documents after reviewing the Handbook. His failure to do so did not change the Agreement or the Handbook's arbitration clause. He continued to work for SMS and could consult the Handbook at any time to study the terms of his employment, regardless of whether he signed it. "[W]hat matters is whether there is agreement, not whether there is a signature; agreement can be found from conduct that

9

ratifies or impliedly accepts the deal." (*Fuentes v. Empire Nissan, Inc.* (2023) 90 Cal.App.5th 919, 933.)

## DISPOSITION

The order denying arbitration is reversed.  The case is remanded with directions to order the parties to arbitrate their dispute pursuant to their 2009 Mutual Arbitration Agreement. Respondent to bear all costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.