Filed 4/22/25  Carrion v. Sunset Services Holdings CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| RAFAEL CARRION,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>SUNSET SERVICES HOLDINGS, LLC,<br><br>      Defendant and Appellant. | B337432<br><br>(Los Angeles County Super. Ct. No. 23STCV12860) |

APPEAL from an order of the Superior Court of the County of Los Angeles, Stuart M. Rice, Judge.  Affirmed.

Jackson Lewis, Andrea F. Oxman, Payam Malakouti, and Dylan B. Carp, for Defendant and Appellant.

Moon Law Group, H. Scott Leviant, Kane Moon, Lilit Ter-Astvatsatryan, and Holly Williams, for Plaintiff and Respondent.

# I. INTRODUCTION

Defendant Sunset Services Holdings, LLC appeals from an order denying its motion to compel arbitration of a dispute with its former employee, plaintiff Rafael Carrion. The trial court found that the parties had not agreed to arbitrate because the employee handbook, which included an arbitration provision, disclaimed the creation of contractual rights. We affirm.

# II. FACTUAL BACKGROUND

## A. *The Parties*

Defendant, a limited liability company,[1] provides studio production facilities, sound stages, and production services in Los Angeles, New York, and London to a client base that includes production companies from across the United States and abroad.

Plaintiff began his employment with defendant's predecessor in 2000 as an engineer technician. In 2019, he began working for defendant as a broadcast engineer assistant. In January 2023, plaintiff was laid off.

## B. *2021 Handbook*

In 2021, Hudson distributed to plaintiff, on its web-based employee portal, an updated employee handbook (the handbook).

---

[1] Defendant is owned by its managing member Hudson Pacific Services, Inc., which is wholly owned by Hudson Pacific Properties, L.P., whose general partner is Hudson Pacific Properties, Inc. (collectively, Hudson).

2

Plaintiff received and electronically signed his copy of the handbook on November 19, 2021.

### 1. Welcome Letter[2]

The handbook's first page of substantive material appears on page 5 and begins, "WELCOME TO HUDSON PACIFIC PROPERTIES!" The first paragraph of the welcome letter directs the employee to read the handbook carefully, keep it for future reference, and discuss any questions with a supervisor or human resources personnel. The second paragraph states Hudson's view that each of its employees "contribute[s] directly to the Company's[3] growth and success, and [its] hope [that the employee] will take pride in being a member of [their] team."

### 2. Handbook Disclaimers of Contract

The third and fourth paragraphs of the welcome letter advise the employee that the handbook "contains only general information and guidelines. It is not intended to be comprehensive or to address all the possible applications of, or exceptions to, the general policies and procedures described. . . .

---

[2]    We adopt the terminology used by the court in *Esparza v. Sand & Sea, Inc.* (2016) 2 Cal.App.5th 781 (*Esparza*) and refer to this two-page section of the handbook as the "welcome letter." (Id. at p. 784.)

[3]    The handbook explained that Hudson and it affiliated entities would be referred to as the "'Company'".

[¶] . . . This [e]mployee [h]andbook is intended to be a general source of information and is not a contract."

The last page of the handbook, in the final section entitled "CLOSING REMARKS", addresses defendant's policies and procedures, providing: "This [e]mployee [h]andbook is not intended to establish terms of employment. [¶] The Company reserves the right to revise, modify, delete, or add to any and all policies, procedures, work rules, or benefits stated in this [e]mployee [h]andbook or in any other document, except for the policy of at-will employment."

### 3. Handbook Provisions on Arbitration

The handbook also includes various references to arbitration. Page 1, which follows two cover pages, contains the following statement about arbitration: "It is your responsibility and obligation to read and understand this [e]mployee [h]andbook and its policies. . . . This [e]mployee [h]andbook contains an arbitration requirement that applies to both you and the employer." The next page, in the table of contents, under the heading "EMPLOYMENT", contains a subheading entitled, "ARBITRATION."

The welcome letter also includes a reference to defendant's arbitration policy. Following its statement, described above, that the Company reserves the right to change any policies or procedures, the letter provides: "The Company, however, may only make changes to this [e]mployee [h]andbook's Arbitration Policy as are necessary to make the Arbitration Policy enforceable under any federal, state, or local law or other applicable case law effective after this [e]mployee [h]andbook's

4

initial dissemination to its workforce. In all instances, the Company's policies will comply with all applicable federal, state, and local laws and this [e]mployee [h]andbook will be deemed modified to conform to such laws."

The provision describing the scope of the arbitration requirement and the procedures that will govern resolution of any employment-related disputes is set forth at pages 13 through 15, under the heading, "ARBITRATION". That provision begins with the following language: "Any controversy, dispute or claim between any employee and the Company . . . shall be settled by binding arbitration, at the request of either party. . . . Even if the Company does not sign for its receipt or acknowledgement of this policy, the Company, like the employee, agrees to be bound by this policy and agrees to arbitrate all disputes with its employees or former employees."

The third paragraph of the arbitration provision sets forth a waiver of the right to a court or jury trial: "BOTH THE COMPANY AND EMPLOYEES UNDERSTAND THAT BY USING ARBITRATION TO RESOLVE DISPUTES THEY ARE GIVING UP ANY RIGHT THAT THEY MAY HAVE TO A JUDGE OR JURY TRIAL WITH REGARD TO ALL ISSUES CONCERNING EMPLOYMENT."

4.      Acknowledgement

Following the last page of text, the handbook, on page 52, contains a final page entitled, "ACKNOWLEDGEMENT OF RECEIPT AND REVIEW OF EMPLOYEE HANDBOOK". The first paragraph of the acknowledgement discusses the employee's obligation to read and understand the handbook and again

5

addresses the arbitration requirement: "This is to acknowledge that I have received and read a copy of the [employee handbook]. This [e]mployee [h]andbook sets forth the terms and conditions of my employment as well as the rights, duties, responsibilities, and obligations of my employment with the Company. I understand and agree that it is my responsibility to read and familiarize myself with all of the provisions of the [e]mployee [h]andbook. I further understand and agree that I am bound by the provisions of the [e]mployee [h]andbook, particularly the provision relating to the mandatory, binding arbitration of any employment-related dispute. I understand that by agreeing to arbitration, I am waiving the right to a trial by jury of the matters covered by the 'Arbitration' provisions of the [e]mployee [h]andbook. I understand that if I have any questions about any portion of this [e]mployee [h]andbook, including the arbitration policy, I may direct those questions to Human Resources."

The second paragraph provides, "Whether or not I have signed a separate agreement to arbitrate, I understand that my employment with the Company is subject to binding arbitration, which is set forth in the 'Arbitration' section of the [e]mployee [h]andbook. This agreement to arbitrate constitutes a waiver of any right that the Company or I may have to bring and pursue any claim in a court of law with a [trial] by judge or jury. I understand and acknowledge that the agreement to arbitrate contains a waiver of my ability to act as a class representative in any class action proceeding or to participate in any class proceeding as a member of a class. Arbitration provided for under this agreement is the exclusive method to resolve any disputes or controversies that the Company or I may have,

6

whether or not arising out of my employment or termination of that employment with the Company."

Plaintiff electronically signed the acknowledgement on November 19, 2021.

## III.   PROCEDURAL BACKGROUND

A.   *Complaint*

On October 12, 2023, plaintiff filed the operative first amended complaint asserting eight causes of action, on behalf of himself and other similarly situated current and former employees of defendant, and one representative cause of action to recover civil penalties under the Private Attorney General Act (PAGA), Labor Code section 2699 et seq.  The claims were based on alleged violations of various wage and hour provisions of the Labor Code.

B.   *Motion to Compel Arbitration*

On November 3, 2023, defendant filed a motion to compel arbitration, arguing that plaintiff voluntarily entered into an agreement to arbitrate when he electronically signed the acknowledgment at the end of his employee handbook certifying that he had read and understood the document.

Plaintiff opposed the motion, citing *Esparza, supra*, 2 Cal.App.5th 781 and arguing that, "where the employee handbook explicitly states that the handbook should not be construed as a contract . . . , the arbitration provision in the employee handbook is not enforceable."  Plaintiff pointed to the

sentence in the handbook's introductory section that read, "This [e]mployee [h]andbook is intended to be a general source of information and is not a contract." Based on that language, plaintiff contended that "there is no valid agreement between the [p]arties to arbitrate [p]laintiff's claims."

C.     *Ruling*

On February 8, 2024, the trial court held a hearing on the motion to compel arbitration. Following the hearing, the court issued a written ruling denying the motion. The court described *Esparza, supra*, 2 Cal.App.5th 781, as "highly similar to this case" and, relying on the disclaimers in the handbook discussed above, concluded that, "[g]iven the handbook's repeated insistence that nothing in it is intended to form a contract or establish terms or conditions of employment, there is no way the [a]cknowledgment can constitute assent to an arbitration agreement. Indeed, a potential employee would feel less hesitant to acknowledge receipt of the handbook in writing when its language assures him its contents do not constitute a contract. The 2021 Agreement is therefore not an enforceable arbitration agreement."

In the alternative, the trial court ruled that "[e]ven if the Court were to consider the 2021 [h]andbook and [a]cknowledgment ambiguous in whether they were intended to form an arbitration agreement, the conclusion would still be that they do not constitute an enforceable agreement." Based on the canon of contractual interpretation set forth in Civil Code section 1654 requiring ambiguities in a contract to be construed against the drafter, the court concluded that it would "construe any

8

ambiguities which may exist here in [p]laintiff's favor as the law requires.  The 2021 Agreement was not intended to be an enforceable arbitration contract."

On March 13, 2024, defendant filed an appeal from the order denying the motion to compel arbitration.

## IV.  DISCUSSION

### A.  *Burden of Proof and Standard of Review*

The party seeking arbitration "bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)  "Although "'California has a strong public policy in favor of arbitration and any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration,'" there is no public policy 'that favors the arbitration of disputes the parties did not agree to arbitrate.  [Citation.]' [Citation.]" (*Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 764.)

"'Under both federal and state law, the threshold question presented by a petition to compel arbitration is whether there is an agreement to arbitrate.'" (*Sellers v. JustAnswer LLC* (2021) 73 Cal.App.5th 444, 460 (*Sellers*).)  We apply California law to determine the answer to this threshold question.  (*Id.* at p. 462, fn. 4 ["courts generally apply state law principles governing the formation of contracts when deciding whether an agreement to arbitrate exists in the first instance"].)

When, as in this case, there is no dispute as to the language of the arbitration agreement or extrinsic evidence to consider,

9

"[o]ur review of the trial court's resolution of the contract formation question is therefore independent. (*Sellers, supra*, 73 Cal.App.5th at p. 462 ['where there is no dispute as to the material facts, "the existence of a contract is a question [of law] for the court to decide"']; accord, *Pinnacle* [*Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223,] 236 [(*Pinnacle*)] [where 'the evidence is not in conflict' the trial court's arbitration ruling is reviewed de novo].)" (*Herzog v. Superior Court* (2024) 101 Cal.App.5th 1280, 1295, fn. omitted.)

B.    *Analysis*

Defendant contends that the trial court erred in finding no mutual assent to arbitrate employment-related disputes because "the clear and explicit meaning of the [e]mployee [h]andbook and [a]cknowledgement is the parties mutually assented to arbitration." Relying on the handbook's multiple references to the resolution of disputes by arbitration and plaintiff's execution of the acknowledgment, defendant concludes that "[t]hese provisions unambiguously mean the parties agreed to arbitration." We disagree.

"Contract formation requires mutual consent, which cannot exist unless the parties 'agree upon the same thing in the same sense.' (Civ. Code, § 1580; see also §§ 1550, 1565.) 'If there is no evidence establishing a manifestation of assent to the "same thing" by both parties, then there is no mutual consent to contract and no contract formation.' [Citation.] 'Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed

10

intentions or understandings.' [Citations.]" (*Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 208.)

In our view, the handbook's references to an arbitration policy or requirement are not "unambiguous" given the welcome letter's advisement that the handbook is "a general source of information and is not a contract" and the statement in the closing remarks section that "[t]he information in this [e]mployee [h]andbook is general in nature . . . . This [e]mployee [h]andbook is not intended to establish terms of employment." These broad disclaimers are substantively indistinguishable from the one in the welcome letter in *Esparza, supra*, 2 Cal.App.5th 781 which stated that the handbook was "'not intended to be a contract (express or implied)'" or to "'otherwise create any legally enforceable obligations on the part of the Company or its employees.'" (*Id*. at p. 784, italics omitted.)

Like the court in *Esparza, supra*, 2 Cal.App.5th 781, we conclude that the contractual disclaimers here "undermine[] defendant['s] argument that the handbook and its arbitration provision actually *was* intended to create a legally enforceable obligation to arbitrate." (*Id*. at p. 789.) Given the broad language disclaiming the creation of any contractual obligations, both at the beginning and the end of the handbook, "the reasonable interpretation of the welcome letter is that it meant exactly what it said—that the handbook was ['to be a general source of information and . . . not a contract'] to arbitrate." (*Ibid*.) The trial court therefore correctly concluded that defendant had failed to demonstrate the requisite mutual assent to arbitration.

Defendant counters that the handbook here, unlike the one in *Esparza, supra*, 2 Cal.App.5th 781, includes "a specific reference to the duty to arbitrate employment-related disputes in

the acknowledgement of receipt form signed by the employee." Although the court in *Esparza* noted that, "'[a]t a minimum, there should be a specific reference to the duty to arbitrate employment-related disputes in the acknowledgment of receipt form signed by the employee'", it did not suggest that the existence of such a reference, by itself, would constitute sufficient evidence of mutual assent to be bound. (*Id*. at p. 791.) In light of the directly contradictory language in the welcome letter and at the end of the handbook disavowing the existence of any agreement between the parties, the reference, at best, rendered any assent to arbitration uncertain.

Finally, we consider defendant's contention that even if the handbook's references to an arbitration agreement are ambiguous, those ambiguities should be interpreted to mean the parties agreed to arbitrate. Defendant cites *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, in support. In that case, the court considered the plaintiff's contention that an arbitration agreement was unenforceable because it included conflicting provisions governing the allocation of arbitration costs, which the plaintiff argued demonstrated "there was no mutual assent and, hence, no enforceable agreement to arbitrate." (*Id*. at p. 1214.) The court rejected the plaintiff's assertion, construed the conflicting provisions as to who would pay against the defendant, as the drafter of the agreement, and thus found "no fatal ambiguity." (*Id*. at p. 1215.)

The issue in this case, however, does not concern the interpretation of an ambiguous provision within an agreement, but rather the threshold formation issue of whether the language of the handbook can be construed as a sufficient manifestation of assent to the same thing, namely, an agreement, or contract, to

12

arbitrate.  And on this issue, defendant, as the party seeking to compel arbitration, had the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence. (*Pinnacle, supra,* 55 Cal.4th at p. 236.)  We agree with the trial court that defendant did not meet its burden here.

## V.    DISPOSITION

The order denying the petition to compel arbitration is affirmed.  Plaintiff is awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

HOFFSTADT, P. J.

MOOR, J.

13