Filed 5/9/25  Saenz v. Eurostar CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JUDDY SAENZ,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>EUROSTAR, INC.,<br><br>      Defendant and Appellant. | B333851<br><br>(Los Angeles County<br>Super. Ct. No.<br>22STCV39723) |

APPEAL from an order of the Superior Court of Los Angeles County, Theresa Traber, Judge.  Affirmed.

Manatt, Phelps & Phillips, Andrew L. Satenberg, Ryan P. Patterson and Benjamin G. Shatz for Defendant and Appellant.

Bartz Law Group and Aaron A. Bartz for Plaintiff and Respondent.

_____

Defendant and appellant Eurostar, Inc., (Eurostar) appeals from an order denying a motion to compel arbitration entered in favor of plaintiff and respondent Juddy Saenz in this representative action for violation of wage and hour laws under the Private Attorneys General Act of 2004 (PAGA; Labor Code, § 2698 et seq.). On appeal, Eurostar contends: (1) the trial court erred by concluding Eurostar failed to meet its burden to show the existence of an arbitration agreement by a preponderance of the evidence, (2) the agreement was not unconscionable, and (3) any unconscionable provisions should have been severed. We conclude the record is inadequate to review Eurostar's contentions because it does not include a reporter's transcript or suitable substitute for the hearing on the motion to compel arbitration. Even if we were to find the record adequate for review, however, we would conclude substantial evidence supports the trial court's finding that Eurostar failed to show the existence of an arbitration agreement by a preponderance of the evidence, and therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

On January 14, 2022, Eurostar hired Saenz as an assistant store manager. In or around February 2022, Saenz came into the office and the store manager walked her through the new hire process. The manager asked for Saenz's contact information,

---

[1] The facts are stated in the light most favorable to the judgment in accordance with the standard of review. (*Slone v. El Centro Regional Medical Center* (2024) 106 Cal.App.5th 1160, 1173.)

including her address, social security number, and other identification.  The manager entered the information into her computer, which Saenz did not have access to.  The new hire process took approximately 30 minutes.  The manager filled out the documents for Saenz's new hire, including a W-4 tax withholding form.  Saenz was never provided with any documents to sign whatsoever.  She does not remember the manager mentioning or explaining an arbitration agreement, and she does not recall signing an arbitration agreement.  At no time in the new hire process was it explained that she would be waiving the right to pursue any claims in court.  If she had been made aware of the existence of an arbitration agreement and had the provisions, including the waiver to bring claims in court, been explained, Saenz would not have agreed to be subject to such an agreement.

There was no opportunity to negotiate any terms of the new hire documents that the manager had on her computer.  None of the documents were explained, and Saenz was given no time to review or consider them.  She was told that if she wanted to work for Eurostar, she needed to agree to the documents.  Saenz was also never given copies of the documents that the manager filled out during the new hire process and had on her computer.  She was never given information about the arbitration rules, or provided with a copy of the rules or where to locate them.

Eurostar terminated Saenz's employment on August 26, 2022.  On December 21, 2022, Saenz filed an action against Eurostar alleging a single PAGA claim for violation of wage and hour laws, requesting a jury trial.

On May 22, 2023, Eurostar filed a motion to compel arbitration.  Eurostar submitted a three-page arbitration

agreement.  A typewritten note appears at the bottom of page one and two stating:  "Signed by:  Juddy Saenz, 02/02/0222."  On the third page, at the end of the agreement, the typewritten statement, "Juddy Saenz, 02/02/2022", appears above the place for the "Employee Signature".

Eurostar submitted the declaration of Senior Director of Human Resources Marie Lopez Mackay concerning Eurostar's pattern and practice, although Mackay did not have any personal knowledge about whether Saenz signed the arbitration agreement.

On September 26, 2023, Saenz opposed the motion to compel arbitration.  She argued that Eurostar could not show an arbitration agreement existed, because Mackay had no personal knowledge and merely concluded that Saenz executed the agreement.  There was no evidence that the printed "electronic signature" was an act of Saenz.  In addition, Saenz argued that the arbitration agreement was procedurally and substantively unconscionable, and the unconscionable provisions could not be severed.  Saenz submitted her declaration in support of the opposition, attesting to the facts described above.

On October 2, 2023, Eurostar filed a reply.  In the event the trial court was inclined to deny the motion based on Saenz's version of the facts, Eurostar requested an evidentiary hearing.

Eurostar submitted the declaration of Human Resources Information Systems Manager Desiree Macias in support of the reply.  Macias stated that Eurostar requires new employees to consent to an arbitration agreement, which they review and sign electronically through the human resources platform.  To access the arbitration agreement, an employee must register an account on the human resources platform using their employee

4

identification number as their username and selecting a unique password. No other employee or manager has access to, or can change, an employee's password for the platform. Macias did not explain, however, whether any other employee or manager has access to Saenz's account.

Macias further declared that there was a new employee checklist in the human resources platform. An employee must click through each document in its entirety, and electronically initial and sign the documents, including the arbitration agreement. The human resources platform logs the date and time of completion.

The human resources platform showed Saenz's account was registered on January 26, 2022, and thirteen new hire documents were signed electronically between 4:33 p.m. and 4:43 p.m. that day; the signed documents did not, however, include the arbitration agreement. Seventeen remaining documents were signed electronically on February 2, 2022, between 2:46 p.m. and 3:11 p.m., including the arbitration agreement, and the new hire checklist was completed. Form I-9, as well as federal and state withholding forms, were among the documents completed on February 2, 2022.

Eurostar also submitted the declaration of store manager Nieves Baltazar with its reply in support of the motion to compel arbitration. Baltazar stated that Saenz came into the store on January 26, 2022, for an onboarding meeting to integrate her as a new employee. The meeting was held in the store's back office using the store's on-site computer. Baltazar assisted Saenz in registering her account on the human resources platform. Saenz selected a password, which she did not disclose to Baltazar. Baltazar guided her to the new hire checklist of onboarding

documents to electronically review and sign. Baltazar asked for Saenz's social security number and to see her driver's license to fill out the employer portion of the tax verification form. Baltazar stated that she left the back office so Saenz could review and sign the documents. There was a technical issue where onboarding documents were not displaying as complete on the human resources end. Baltazar ended the onboarding meeting and informed Saenz that she would have to come back to complete the onboarding. On February 2, 2022, Eurostar's service desk department contacted Baltazar to let her know the technical issue was resolved, and human resources personnel confirmed that onboarding documents signed on January 26, 2022, were showing as completed. Baltazar contacted Saenz, who returned to the store, reviewed and signed the remaining onboarding documents, and completed the new hire checklist. Baltazar declared that Saenz personally reviewed and signed the new hire onboarding documents. Baltazar did not review or sign any of Saenz's documents, nor has she ever done so for any employee.

After a hearing on October 9, 2023, the trial court took the matter under submission. No reporter's transcript of the hearing has been made part of the appellate record. On October 20, 2023, the trial court issued an order denying the motion to compel arbitration. The court found Mackay's declaration offered no basis to conclude the electronic signature on the arbitration agreement was authentic. The court noted Macias described the human resources platform and stated an employee creates a unique password, and that no other employee or manager has access to the *password*; but Macias did not state that no other employee or manager has access to the employee's *account*. The

6

court was not persuaded that Eurostar met its burden to establish the existence of an arbitration agreement between the parties.

The court stated, "Although [Eurostar] has provided evidence that the arbitration agreement was signed using [Saenz's] account on February 2, 2022 with other employment documents, [Eurostar] has not established that [Saenz] herself signed the agreement.  The only witnesses to the February 2, 2022 onboarding session were [Saenz] and Nieves Baltazar, and the onboarding was conducted using a store computer that [Saenz] did not have regular access to.  Moreover, while [Saenz] described the events of that onboarding session, the Baltazar declaration only provides a vague statement that she signed the remaining documents.  Given the competing accounts and the circumstances surrounding the completion of these materials, the Court is not satisfied that [Eurostar] has properly authenticated [Saenz's] electronic signature.  Therefore, [Eurostar] has not established an arbitration agreement between the parties."

In addition, even if Eurostar could show Saenz signed an arbitration agreement, the trial court stated it would refuse to enforce the agreement as unconscionable.  The agreement was procedurally unconscionable because it was a contract of adhesion, buried as a surprise in a large group of documents, and Eurostar failed to provide the arbitration rules.  The court identified multiple terms that the court found to be substantively unconscionable as well.  The court exercised its discretion to refuse to sever the deficient terms.  Based on these findings, the court denied the motion to compel arbitration.

Eurostar filed a timely notice of appeal from the order denying the motion to compel arbitration.

## DISCUSSION

### A. Standard of Review and Inadequacy of the Appellate Record

In ruling on a motion to compel arbitration, the trial court determines the facts. (*Fleming v. Oliphant Financial, LLC* (2023) 88 Cal.App.5th 13, 18 (*Fleming*).) Where the material facts are undisputed, we review the order de novo. (*Ibid*; *Diaz v. Sohnen Enterprises* (2019) 34 Cal.App.5th 126, 129 (*Diaz*).) If the facts are in dispute, however, we review the record to evaluate whether substantial evidence supports the trial court's order. (*Fleming*, *supra*, 88 Cal.App.5th at p. 18.) " 'Under the deferential substantial evidence standard of review, findings of fact are liberally construed to support the judgment or order and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings. [Citation.] "A single witness's testimony may constitute substantial evidence to support a finding. [Citation.] It is not our role as a reviewing court to reweigh the evidence or to assess witness credibility. [Citation.]" ' " (*Bruno v. Hopkins* (2022) 79 Cal.App.5th 801, 823.)

A judgment or order of the lower court is presumed to be correct; the appellant has the burden of overcoming this presumption by affirmatively showing error on appeal by an adequate record. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140–1141.) Under California Rules of Court, rule 8.120(b), "[i]f an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court, the

record on appeal must include a record of these oral proceedings in the form of one of the following:  [¶] (1) A reporter's transcript under rule 8.130; [¶] (2) An agreed statement under rule 8.134; or [¶] (3) A settled statement under rule 8.137."

"Without the proper record, we cannot evaluate issues requiring a factual analysis.  The evidence is presumed sufficient to support the judgment."  (*Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1003.)  "Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct as to all evidentiary matters*.  To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error."  (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992.)

In this case, without a reporter's transcript of the proceedings at the hearing on the motion to compel arbitration, we cannot evaluate any evidence presented or offers of proof made to the trial court, and we do not know what arguments, objections, or concessions were made by the parties, including any discussion bearing on whether a further evidentiary hearing was necessary.  We cannot presume the trial court erred.  The absence of a record of the hearing precludes a determination that the court's findings are not supported by substantial evidence.

## B.    Substantial Evidence

Even based on the limited record provided, which does not reveal why an evidentiary hearing was not held, we conclude the trial court's findings are supported by substantial evidence.

9

"There is a strong public policy favoring contractual arbitration, but that policy does not extend to parties who have not agreed to arbitrate." (*Esparza v. Sand & Sea, Inc.* (2016) 2 Cal.App.5th 781, 787.) General contract law principles determine whether the parties have agreed to arbitration, and mutual assent is an essential element. (*Id.* at pp. 787–788.) The moving party bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence. (*Villareal v. LAD-T, LLC* (2022) 84 Cal.App.5th 446, 456.)

In this case, the parties presented conflicting evidence about whether Saenz reviewed and signed an arbitration agreement as part of the new hire process. The trial court found Saenz's declaration credible – specifically with respect to her testimony that the store manager asked Saenz for information and typed the entries in the computer for Saenz – while noting that the manager's contrary testimony was generalized and not persuasive. Saenz unambiguously declared that she was not provided with any documents to sign whatsoever, her manager typed in the entries for the new hire forms, Saenz did not remember the manager telling her about an arbitration agreement, and Saenz would not have signed an arbitration agreement if the manager had made her aware of it.

Eurostar's own evidence supported Saenz's version of events. The store manager declared that she asked Saenz for information to fill out the employer's portion of the tax verification form in January 2022, but Eurostar's human resources records show federal and state tax forms were completed in February 2022, consistent with Saenz's declaration that she gave her manager the information to complete the tax forms in February 2022. The store manager did not declare that

10

she told Saenz about the arbitration agreement, which was consistent with Saenz's declaration that she did not remember being told about an arbitration agreement. There was substantial evidence to support the trial court's finding that no arbitration agreement existed between the parties.

We need not consider Eurostar's contentions about the admissibility of statements by human resources director Mackay, who was not present during Saenz's new hire process, because they would not affect the resolution of the substantial evidence issue.

## DISPOSITION

The October 20, 2023 order denying the motion to compel arbitration is affirmed. Respondent Juddy Saenz is awarded her costs on appeal.

NOT TO BE PUBLISHED.


MOOR, J.

WE CONCUR:


HOFFSTADT, P. J.


BAKER, J.